IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES E. ZEIGLER, | : | |
| 14310 Blackmon Drive | | |
| Rockville, Maryland 20853 | : | |
| | | Case No. _____ |
| PLAINTIFF | : | |
| | | |
| v. | : | JURY TRIAL DEMANDED |
| | | |
| JOHN E. POTTER, | : | |
| Postmaster General | | |
| U.S. Postal Service | : | |
| 475 L'Enfant Plaza | | |
| Washington, D.C. 20260 | : | |
| | | |
| DEFENDANT | : | |

**COMPLAINT**

(Disability Discrimination, Retaliation)

1.  Plaintiff JAMES E. ZEIGLER brings this action against John E. Potter, Postmaster General, U.S. Postal Service, to recover compensatory damages; back pay; front pay; and reasonable attorney's fees and costs for discrimination and retaliation under the Rehabilitation Act of 1973 (Rehabilitation Act, 29 U.S.C.§ 791, et. seq. ).

**PARTIES, JURISDICTION, AND VENUE**

2.  Plaintiff JAMES E. ZEIGLER is a resident of 14310 Blackmon Drive, Rockville, Maryland 20853.

3.      Defendant John E. Potter is the Postmaster General of the U.S. Postal Service (USPS), an agency of the Federal Government.

4.      USPS has employed Mr. Zeigler at its Capital Metro Area offices since April 1982.

5.      The Rehabilitation Act, 29 U.S.C. § 794a(a)(1), provides this Court with personal jurisdiction over the USPS because the acts that Mr. Zeigler alleges as discriminatory and retaliatory occurred at its Capital Metro Area facilities.

6.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8.      Mr. Zeigler properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(c).

## STATEMENT OF FACTS

9.      Mr. Zeigler, an honorably discharged disabled American veteran, was hired by the USPS in April 1982 as a mail handler.

10.     In 1986, Mr. Zeigler was promoted to a Supervisor of Mails.

11.     In 1988, Mr. Zeigler was promoted to a Customer Service Manager, and thereafter received various managerial promotions and started on a career ladder to becoming a Marketing Manager.

12.     In April 1998, Mr. Zeigler, who was then a Customer Service Finance Manager, was accosted, physically threatened, and verbally abused with language including racial slurs, by his then USPS supervisor, Postmaster Richard Jozwiak at the Suburban postal facility in Maryland.

13. Mr. Zeigler immediately reported the incident to Postal Inspector Stephen Elia, and provided him with names of witnesses to the incident.

14. The next day, the USPS transferred Mr. Zeigler to the Brentwood Washington D.C. facility.

15. Approximately six months after Mr. Zeigler was transferred, however, Postmaster Jozwiak's manager, Mr. Mack , attempted to send him back to the Suburban facility to work under Postmaster Jozwiak again. Mr. Zeigler had to seek redress from a District Manager, and he was instead assigned to the Columbia Heights and the T Street postal offices in D.C. where he worked as a Customer Service Finance Manager.

16. No formal acknowledgement was ever given by the USPS of the assault incident nor disciplinary action taken against Postmaster Jozwiak, even though the USPS had a "zero tolerance" policy on workplace violence. Instead, Mr. Zeigler was subjected to further hostility from other supervisors, and warned by Mr. Mack that going forward with his complaint would jeopardize his career.

17. During this time, Mr. Zeigler became very depressed, fearful, and apprehensive about his work environment.

18. On September 3, 1998; September 11, 1998, and September 18, 1998, Mr. Zeigler's physician, Dr. Weisel, examined him and concluded that he suffered from depression and hypertension related to work stress.

19. In September 1998, Dr. Weisel, provided a letter substantiating Mr. Zeigler's leave from August 25, 1998 through September 24, 1998 due to his depression and stress.

20. During 1999, Mr. Zeigler continued to receive medical treatment from Dr. Weisel and another physician in the same office, Dr. Sukachevin, for severe depression and hypertension.

21. By February 2000, Mr. Zeigler's medical condition had worsened, and on February 9, 2000 he again took leave from work.

22. On February 23, 2000, Mr. Zeigler faxed to his then supervisor, Rodney Payne, and other USPS managers, a medical leave request form, along with medical documentation to cover his absence.

23. On March 4, 2000, Mr. Zeigler underwent an Initial Psychiatric Evaluation by Dr. Patel.

24. On March 23, 2000, Rodney Payne sent Mr. Zeigler a letter charging him with unauthorized leave since March 1, 2000 (AWOL), claiming that Mr. Zeigler had failed to provide medical documentation to substantiate his leave.

25. On March 27, 2000, Dr. Sukachevin wrote a letter to Dr. Thomas Lawford and Doris Saunders , USPS Health Unit, stating that Mr. Zeigler had not been able to work since February 8, 2000 "because of his difficulties with depressive symptoms" ; that his complaints were of "depression, decreased appetite, poor concentration, and suicidal ideation", and that "his long history and recurrent symptomology is consistent with a diagnosis of Major Depression, which he states he was diagnosed by

a psychiatrist." Dr. Sukachevin further stated that Mr. Zeigler's condition was chronic and "he will need to be on antidepressants for at least seven months, perhaps a lifetime."

26. In March 2000, Mr. Zeigler also filed a Notice of Occupational Disease with the Office of Workers Compensation (OWCP) based on his mental injury sustained due to work factors in the performance of his employment.

27. On May 24, 2000, John Cordell, Customer Service Operations Manager, sent Mr. Zeigler a letter charging him with unauthorized leave of absence (AWOL) from May 9, 2000.

28. In June 2000, Robert J. Paiva, Customer Service Support Manager, sent Mr. Zeigler a letter charging him with Absent Without Leave/Permission (AWOL), and informing him that removal proceedings were being initiated against him.

29. On July 7, 2000, Dr. Sukachevin sent another letter to Dr. Thomas Lawford and Doris Saunders of the USPS Health Unit once again informing them of the medical necessity of Mr. Zeigler's leave due to his Major Depression.

30. On July 24, 2000, Mr. Zeigler's psychiatrist, Dr. Patel, also sent a letter to Dr. Thomas Lawford and Doris Saunders stating that Mr. Zeigler's Major Depression was "severe enough to interfere with his social, occupational, and familial functioning" and that he "would benefit from medical disability."

31. In early October 2000, John Cordell sent Mr. Zeigler a letter of his decision to remove him for AWOL.

32. Mr. Zeigler subsequently filed a 650 ELM appeal of the removal decision.

33. In early November 2000, Mr. Zeigler's psychologist, Dr. Jayson, sent Dr. Thomas Lawford and Doris Saunders her Clinical Overview describing Mr. Zeigler's long history of depression dating back to his service in the Navy; his recurrent Post Traumatic Stress Syndrome (PTSD); his symptomology including flashbacks; frequent nightmares; significant insomnia; hypervigilance; social avoidance behavior; and social isolation.

34. On November 13, 2000, Naomi Bourdon, Manager, Human Resources, Capital Metro Operations, and Kathleen Ely of EEO Compliance and Appeals, issued a decision on Mr. Zeigler's ELM 650 appeal in favor of Mr. Zeigler. The decision rescinded the removal on the grounds that the removal for AWOL was "arbitrary and capricious and not within the tolerable limits of reasonableness." The decision stated that the medical documentation provided prior to the decision to remove him "clearly stated that the appellant was incapacitated for duty" and that at the time of the removal decision, "the Agency had clear and conclusive evidence that appellant continued to be incapacitated for duty". The decision letter also directed the Agency to contact Mr. Zeigler "to assist him with disability retirement efforts."

35. On December 5, 2000, at Mr. Zeigler's request, Kathleen Ely sent Postmaster Delores Killette a Memorandum with a duplicate copy of Mr. Zeigler's complete medical documentation, as well as a copy of Mr. Zeigler's Office of Worker's Compensation Programs (OWCP) CA-2 claim forms that his supervisors had refused to process, despite his repeated requests over the prior eight months.

36. In January 2001, Human Resources Specialist Diane Dade sent Mr. Zeigler a letter inquiring about completion of the disability retirement package, and Mr. Zeigler responded in writing that he never received the disability package.

37. Mr. Zeigler continued extensive medical treatments with Dr. Jayson and Dr. Sukachevin for his Major Depression and PTSD, and by August 2001, his medical condition had improved .

38. On August 2, 2001, Dr. Jayson sent the USPS Medical Unit a letter stating that Mr. Zeigler was, in her professional opinion, ready to return to work "in a limited duty status" as long as he: (1) be assigned to a work location where the stressors did not occur; (2) be absolutely not exposed to persons causing the stressors; (3) be allowed to attend weekly therapy sessions; (4) work 8 AM to 4PM Monday through Friday 40 hours per week; (5) work in Montgomery County, Maryland within a close distance to weekly therapy sessions; (6) be assigned to manage a maximum of 4 employees for the first 90 days of returning to work; and (7) be assigned a position in one of his areas of expertise.

39. On August 14, 2001, Postmaster Killette sent Mr. Zeigler a response letter stating that "since [his] OCWP claim is not yet adjudicated, this should be considered light duty" and that "[his] request for temporary light duty is denied because [his] restrictions cannot be accommodated". No reasons were given as to why his restrictions could not be accommodated.

40. On August 30, 2001, Dr. Jayson sent a second letter to both Postmaster Killette and the District Manager at the Brentwood location which was identical to

her earlier August 14, 2001 letter, except that instead of using the term "light duty status" she used the words "reasonable accommodation status".

41. Having received no response from the USPS, Dr. Jayson sent a third letter on September 11, 2001 to the USPS Medical Unit and the District Manager identical to her August 30, 2001 letter; however, this time she only requested that he: (1) be assigned to a work location where the stressors did not occur; (2) be absolutely not exposed to persons causing the stressors; (3) work 8 AM to 4PM Monday through Friday 40 hours per week; (4) work in Montgomery County, Maryland so that he could attend weekly therapy sessions; (5) be assigned a position in one of his areas of expertise.

42. On September 26, 2001, Mr. Zeigler received a letter in the regular mail from Christine Dailey, Reasonable Accommodation Committee member, requesting additional medical information "[b]efore we can render a decision in your case." The letter was dated August 27, 2001 but was not mailed by the USPS until nearly thirty days later.

43. In response, on September 27, 2001, Dr. Jayson sent Christine Dailey a letter, along with a completed USPS Medical Restrictions Form.

44. After that, for nearly six months Mr. Zeigler received no communication at all from the USPS concerning his requests for reasonable accommodation. Mr. Zeigler wrote to several Congresspersons seeking their help. He also sought their help in addressing the delay in processing of his disability claims with the OWCP and

Veterans Administration due to the USPS's failure to respond to their information requests.

45.     During this time, the previous medical progress Mr. Zeigler had made began to deteriorate due to stress and anxiety caused by the USPS's discriminatory treatment.

46.     In November 2001, Mr. Zeigler's OWCP disability claim was denied, and Mr. Zeigler subsequently filed an appeal of the denial.

47.     In early December 2001, Mr. Zeigler received a letter from USPS Human Resources informing him that he would be paid $ 1,817.56, representing a partial payout of his Pay for Performance reserve account balance (EVA account).  The letter further stated that the check (after deduction of taxes) would be dated December 14, 2001, and be sent to his work location.    Postmaster Killette, however, withheld Mr. Zeigler's check and did not send it to him.

48.     On February 19, 2002, the VA issued a "Rating Decision" for Mr. Zeigler, assigning him a 70% occupational and social impairment deficiency based on his service connected PTSD.

49.     In March 2002, the USPS Reasonable Accommodation Committee (RAC) sent Mr. Zeigler a letter stating that:

> "[r]ecently the Reasonable Accommodation Committee met with you regarding your requested work place accommodation. The committee reviewed this request and determined that reasonable accommodation is not required.  The committee's decision is based on the fact that available medical

      records failed to establish that you are disabled in accordance with the Rehabilitation Act…. the committee is closing your file and referring you back to Delores Killette, Postmaster."

50.    Mr. Zeigler had, in fact, never met with anyone on the RAC nor received any prior communication from the RAC since September 2001 when Christine Dailey requested additional medical information.

51.    On April 2, 2002, Mr. Zeigler requested EEO counseling for disability discrimination and retaliation.

52.    In August 2002, EEO Dispute Resolution Specialist, Willie Boyd, contacted Postmaster Killette and Charlynn Lancaster of the RAC. Postmaster Killette had no resolution to offer.

53.    In September 2002, Mr. Zeigler filed a formal EEOC Complaint of disability discrimination and retaliation.

54.    On October 3, 2002, the US Dept. of Labor's OWCP Branch of Hearings and Review issued a decision rescinding the November 2001 denial of Mr. Zeigler's OWCP claim, and remanding the case for further factual development. The decision stated that among the other evidence presented, Mr. Zeigler "also provided clear evidence supporting his claim that the Postal Service improperly sought to remove him..." and that this "also tends to support his allegations that the Postal Service improperly rejected his medical evidence of disability…"

55. After that, the OWCP made additional requests to the USPS for documentation and information necessary to develop the facts related to Mr. Zeigler's OWCP claims. The USPS did not respond.

56. On February 14, 2003, the OWCP issued a second denial of Mr. Zeigler's claim on grounds that the evidence on record was inadequate to support his claim. Mr. Zeigler filed another appeal of this denial.

57. Shortly after, on February 19, 2003, Rodney Payne sent Mr. Zeigler a letter again charging him with AWOL, and alleging that he had failed to provide medical documentation since *March 2000* to support his leave.

58. On February 26, 2003, Dr. Jayson provided another letter addressing Mr. Zeigler's diagnoses of chronic Major Depression and PTSD dating from March 2000.

59. In March 2003, Mr. Zeigler resent Rodney Payne duplicate medical documentation of his mental illness but Mr. Payne rejected the medical documentation and sent it back to him.

60. On April 9, 2003 Mr. Zeigler filed a second EEOC Complaint alleging disability discrimination and retaliation.

61. On July 18, 2003, Houston Coleman, EEOC investigator sent Mr. Zeigler a letter informing him that Rodney Payne and John Cordell had both advised him that they had not seen nor heard from Mr. Zeigler in over 2 years, and that they could not offer any resolution.

62. On November 3, 2003, the US Dept. of Labor OWCP Branch of Hearings and Review rescinded the second OWCP denial of Mr. Zeigler's claim on grounds that the OWCP failed to adequately investigate and undertake proper development of the facts of the case, this due primarily to the USPS's failure to respond to OWCP's requests for information.

63. From November 2003 through January 2004, despite OWCP's repeated requests for information necessary to process Mr. Zeigler's OWCP claim, the USPS still did not respond.

64. On February 14, 2004, over three years from the time Mr. Zeigler filed his OWCP claim, his claim was accepted for Major Depressive Disorder and Aggravated PTSD.  Another request was made to the USPS to submit necessary forms within 5 working days in order that Mr. Zeigler's compensation entitlement could be processed.

65. On March 19, 2004, Harry Thomas, OWCP claims examiner sent USPS a letter informing the USPS that they had not sent all the necessary information need to process Mr. Zeigler's claim, and that their failure to provide the information "may result in Mr. Zeigler's claim for compensation being denied".

66. The USPS's further delay in providing the information to OWCP caused more delay in Mr. Zeigler receiving his OWCP compensation benefits, in turn causing him added mental injury.

## FIRST CAUSE OF ACTION
### (Failure to Accommodate)

67. Mr. Zeigler adopts and incorporates by reference paragraphs 1- 66 above.

68. Mr. Zeigler's Major Depression and PTSD limit one or more of his major life activities, making him disabled.

69. Mr. Zeigler was qualified to perform the essential functions of his job with reasonable accommodation.

70. The Rehabilitation Act, 29 U.S.C. § 791(b) requires the USPS, a federal employer, to make reasonable accommodations for Mr. Zeigler unless the USPS can demonstrate that the accommodation imposes an undue hardship.

71. Mr. Zeigler, as a disabled American veteran, was entitled to extended leave as a reasonable accommodation for his mental disability. Ample medical documentation provided by his doctors showed the medical necessity of his leave.

72. The USPS's attempts to classify Mr. Zeigler as AWOL, and remove him from service in October 2000 and again in February 2003 were discriminatory.

73. Mr. Zeigler's requested accommodations in August and September of 2001 that would enable him to transition back into active work status were reasonable.

74. The USPS failed to engage in an interactive good faith process with Mr. Zeigler, violating EEOC Regulations and the USPS's own procedures for processing reasonable accommodation requests.

75.     The USPS Reasonable Accommodation Committee (RAC) failed to respond to Mr. Zeigler's requests for reasonable accommodation in a timely manner, taking almost 6 months from September 2001 to March 2002 to send him their decision.

76.     The USPS RAC improperly disregarded, rejected and/or failed to review all of Mr. Zeigler's past and current medical records in his USPS medical file.

77.     The USPS RAC failed to meet or talk with Mr. Zeigler concerning his reasonable accommodation requests, and misrepresented that they had met with him.

78.     The USPS RAC failed to demonstrate how Mr. Zeigler's requested accommodations would pose an undue hardship.

**SECOND CAUSE OF ACTION**
**(Disability Harassment)**

79.     Mr. Zeigler adopts and incorporates by reference paragraphs 1 through 78 above.

80.     The Rehabilitation Act, 29 U.S.C. § 794(a) prohibits the USPS from discriminating against Mr. Zeigler solely by reason of his disability.

81.     Mr. Zeigler's Major Depression and PTSD are disabilities.

82.     Mr. Zeigler was qualified to perform the essential functions of his job with reasonable accommodations.

83.     Mr. Zeigler has suffered an adverse employment action, a hostile work environment, because of his disability.

84.     Various USPS personnel created this hostile work environment when they harassed Mr. Zeigler by various acts, including but not limited to: (1) Rodney Payne,

John Cordell, and Robert Paiva refusing to acknowledge and accept his medical documentation, and the attempted removals of Mr. Zeigler from service in October 2000, and again in February 2003; (2) Rodney Payne and other supervisors refusing to process Mr. Zeigler's OWCP claim forms for one year from March 2000 to March 2001; (3) Postmaster Killette refusing to release his EVA bonus check to him for almost a year after it was issued to him in December 2001; (4) numerous USPS officials continually requesting him to submit additional medical documentation when ample documentation had already been provided; (4) the Reasonable Accommodation Committee (RAC) failing to engage in a good faith interactive process on his reasonable accommodation requests made in August and September 2001; (5) the RAC failing to respond to his reasonable accommodation requests for 6 months; (6) the RAC denying him reasonable accommodation in August 2001 and March 2002 without any undue hardship justification; (7) Rodney Payne and John Cordell giving false and misleading information to EEO Dispute Resolution Specialist, Houston Coleman, in July 2003 when they told him that they had not seen nor heard from Mr. Zeigler in over 2 years; (8) consistently and continually ignoring and refusing to provide the OWCP and VA information they requested from 2001 through 2003 to process Mr. Zeigler's disability claims, including the VA's inquiries about what accommodations the USPS had made for Mr. Zeigler.

## THIRD CAUSE OF ACTION

### (Retaliation)

85.     Mr. Zeigler adopts and incorporates by reference paragraphs 1- 84 above.

15

86. The Rehabilitation Act, 29 U.S.C. § 794(a), provides a cause of action for retaliation pursuant to its incorporation of the American with Disabilities Act of 1990 (ADA), 42, U.S.C. § 12203(a) which prohibits employers from taking reprisal against "any individual because such individual has opposed any act or practice made unlawful by this Act…"

87. Mr. Zeigler also opposed practices made unlawful by the Rehabilitation Act when in October 2000 he filed an appeal of his removal.

88. Thereafter, between October 2000 and September 2002 the USPS retaliated against Mr. Zeigler by: 1) Rodney Payne and other supervisors continuing to not process his CA-2 OWCP forms; 2) Postmaster Killette and the RAC denying without proper justification his August 2001 requests to return to work with reasonable accommodations; 3) the RAC refusing to engage in a good faith interactive process with him about his reasonable accommodation requests; 4) Postmaster Killette unjustifiably holding his EVA bonus check for almost a year after it was issued to him in December 2001; 5) refusing to respond to the VA's and OWCP's repeated requests for information which delayed the processing of Mr. Zeigler's OWCP and VA claims, including the Va's inquiries about what accommodations the USPS had made for Mr. Zeigler.

89. Mr. Zeigler opposed practices made unlawful by the Rehabilitation Act when in September 2002, and in April 2003 he filed a formal EEOC Complaint of disability discrimination and retaliation.

90.     Shortly afterward, from September 2002, the USPS retaliated against Mr. Zeigler by: 1) Rodney Payne, in February 2003, again charging Mr. Zeigler with AWOL and failing to provide medical documentation since March 2000; 2) Rodney Payne refusing the leave slips and medical documentation Mr. Zeigler sent him in March 2003 in response to the AWOL charges; 3) Rodney Payne and John Cordell giving false and misleading information to EEO Dispute Resolution Specialist, Houston Coleman, in July 2003 when they told him that they had not seen nor heard from Mr. Zeigler in over 2 years; 4) continuing to refuse to provide information requested by the OWCP which caused his OWCP claim to be denied for the second time in February 2003.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff James Zeigler requests judgment against John E. Potter, Postmaster General of the U.S. Postal Service, as follows:

A.  $ 300,000 in compensatory damages;

B.  Front pay;

C.  Back Pay;

D.  Reasonable attorney's fees and costs;

E.  Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, JAMES ZEIGLER demands a jury trial to determine all issues so triable.

                                        Respectfully submitted,

                                        _____
                                        Patricia Koh, Esq., # MD 12093
                                        Law Offices of Koh & Koh
                                        3 Leonard Court
                                        Rockville, MD 20850
                                        Tel: (301) 424-8757
                                        Fax: (301) 762-9324
                                        Attorney for Plaintiff