UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| JAMES E. ZEIGLER | ) |
| | ) |
| Plaintiff, | ) |
| v. | )     Case No: 06-1385 (RMC) |
| | ) |
| JOHN E. POTTER, | ) |
| POSTMASTER GENERAL, | ) |
| U.S. POSTAL SERVICE | ) |
| | ) |
| Defendant. | ) |

---

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, Defendant, through counsel, respectfully moves this Court to dismiss Plaintiff's complaint with prejudice or grant summary judgment in favor of the Defendant for lack of subject matter jurisdiction and failure to state a claim.  In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiff's consent before filing it.  LCvR 7 (m).

November 3, 2006                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JAMES E. ZEIGLER                                )
                                                )
                          Plaintiff,            )
                    v.                          )        Case No: 06-1385 (RMC)
                                                )
JOHN E. POTTER,                                 )
POSTMASTER GENERAL,                             )
U.S. POSTAL SERVICE                             )
                                                )
                          Defendant.            )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule 7.1(h), Defendant, John E. Potter, Postmaster General, U.S. Postal Service ("USPS" or "Post Office"), respectfully submits this statement of material facts as to which he contends there is no genuine dispute.  The statements below are established by the record of investigation ("ROI") in this case.

## BACKGROUND

1.      Plaintiff, a USPS employee, alleges that his doctor concluded that he suffered from depression and hypertension in September 1998.  Due to his condition, Plaintiff took leave from work in February 2000.  Compl. at 4, 21.

2.      Plaintiff alleges that while he was away from work due to his disability, his doctors sent medical documentation covering his absence to the Defendant.  Compl. at ¶ 20-34.  In the opinion of his doctor in a letter dated August 30, 2001, the Plaintiff at that time could return to work if given certain accommodations by Defendant.  See Compl. at 40.  In response to this request for reasonable accommodation, the Defendant requested additional medical information from the Plaintiff.  Compl. at 42.

3.    Plaintiff's doctor sent Defendant a letter dated September 27, 2001 which stated:

> Mr. Zeigler is diagnosed with Posttraumatic Stress Disorder.  He also has suffered from a secondary diagnosis of Major Depression.  However, he has made much progress in therapy and his depression has lifted to the point that there are virtually no current symptoms.   Although some symptoms of Postraumatic Stress Disorder still persist, they should not currently interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors.
>
> Mr. Zeigler's current impairment has no significant impact on <u>his major life activities, such as caring for himself, performing manual tasks, walking, seeing , hearing, speaking, breathing, learning or working.</u>

(Emphasis Added).  Exhibit A, ROI, Exhibits 11.

4.    In March 2002, the Defendant denied Plaintiff's reasonable accommodation request. Compl. at 49.

## ADMINISTRATIVE ACTIVITY

5.    Plaintiff filed a formal complaint of discrimination on September 20, 2002, in which he alleged that he was discriminated against based on retaliation and disability when: 1) he was denied a reasonable accommodation; 2) payment from his reserve account balance had not been paid as scheduled since December 14, 2001; and 3) he filed medical documents and Office of Workers Compensation Program claims.  Exhibit B, ROI, Formal Complaint.

6.    Plaintiff filed a second disability discrimination complaint dated April 9, 2003.  Exhibit C, ROI, Formal Complaint.  Plaintiff claimed that he was discriminated and retaliated against for filing medical documents, OWCP claims, Pre-EEO consultation and 650 Appeal settlement for removal when: 1) he was denied reasonable accommodation without just cause and clear explanation; 2) Defendant submitted false statements; and 3) payment from reserve account balance were not paid as scheduled since Dec. 14, 2001.  <u>Id</u>.

2

7.     On September 5, 2003, the Postal Service consolidated Plaintiff's two complaints.  The only issue accepted by the Postal Service for further processing (investigation) was whether the Plaintiff had been discriminated against based on mental disability (PTSD/Major Depression) and retaliation (Prior EEO Activity), when on March 25, 2002, he received a denial of his request for accommodation.  Exhibit D, ROI, Issues to be Investigated, p. 1 and 8.

8.   On April 26, 2006, the Administrative Judge granted the Postal Service's motion and entered judgment for the Postal Service.  Exhibit E, ROI Pleadings, Tab 15, April 26, 2006 Administrative Judge Decision.  The only issue before the Administrative Judge was the same issue accepted by the Postal Service for investigation.  Id.

November 3, 2006                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JAMES E. ZEIGLER                                  )
                                                  )
                        Plaintiff,                )
              v.                                  )         Case No: 06-1385 (RMC)
                                                  )
JOHN E. POTTER,                                   )
POSTMASTER GENERAL,                               )
U.S. POSTAL SERVICE                               )
                                                  )
                        Defendant.                )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, John E. Potter, Postmaster General, U.S. Postal Service ("USPS"), through

counsel, respectfully moves this Court to dismiss Plaintiff's complaint with prejudice or grant

summary judgment in favor of the Defendant for lack of subject matter jurisdiction and failure to

state a claim.  Plaintiff bring suit under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29

U.S.C. § 791, et. seq., and alleges three causes of action: 1) failure to accommodate; 2) disability

harassment; and 3) retaliation.  The Court should dismiss the complaint because Plaintiff has not

exhausted his administrative remedies and does not state a prima facie case for disability

discrimination because he is not an individual with a disability as defined under the

Rehabilitation Act.

## BACKGROUND

Plaintiff, a USPS employee, alleges that his doctor concluded that he suffered from depression and hypertension in September 1998. Due to his condition, Plaintiff took leave from work in February 2000. Compl. at 4, 21.

Plaintiff alleges that while he was away from work due to his disability, his doctors sent medical documentation covering his absence to the Defendant. Compl. at ¶ 20-34. In the opinion of his doctor in a letter dated August 30, 2001, the Plaintiff at that time could return to work if given certain accommodations by Defendant. <u>See</u> Compl. at 40. In response to this request for reasonable accommodation, the Defendant requested additional medical information from the Plaintiff. Compl. at 42.

Plaintiff's doctor sent Defendant a letter dated September 27, 2001 which stated:

Mr. Zeigler is diagnosed with Posttraumatic Stress Disorder. He also has suffered from a secondary diagnosis of Major Depression. However, he has made much progress in therapy and his depression has lifted to the point that there are virtually no current symptoms. Although some symptoms of Postraumatic Stress Disorder still persist, they should not currently interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors.

Mr. Zeigler's current impairment has no significant impact on <u>his major life activities, such as caring for himself, performing manual tasks, walking, seeing , hearing, speaking, breathing, learning or working.</u>

(Emphasis Added). Exhibit A, ROI, Exhibits 11.

In March 2002, the Defendant denied Plaintiff's reasonable accommodation request. Compl. at 49. Alleging disability discrimination, Plaintiff filed his first formal complaint dated September 20, 2002 and his second dated April 9, 2003.

**ARGUMENT**

I.     **Legal Standard for Deciding Rule 12(b)(6) Motions**

In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the

complaint's factual allegations as true and draw all reasonable inferences therefrom in the

plaintiff's favor.  Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d 85,

91 (D.D.C. 2004).  Therefore, the complaint will be dismissed if the plaintiff can prove no set of

facts in support of his claim that would entitle him to relief.  Id.  Finally, while "many well-

pleaded complaints are conclusory, the court need not accept as true inferences unsupported by

facts set out in the complaint or legal conclusions cast as factual allegations."  Id.

II.     **Legal Standard for Deciding Rule 56 Motions**

In the alternative, summary judgment pursuant to Fed. R. Civ. P. 56 is proper when the

pleadings, depositions, answers to interrogatories, and admissions together with affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for

summary judgment, the court must consider whether the nonmoving party failed to make a

showing sufficient to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial.  Sullivan-Obst, 300 F. Supp. 2d at 90.  The

nonmoving party must present specific facts that would enable a reasonable jury to find in its

favor; thus, by pointing to an absence of evidence proffered by the nonmoving party, a moving

party may succeed on summary judgment.  Id.  Also, while the court must accept the nonmoving

party's evidence as true, if the evidence is "merely colorable, or is not significantly probative,"

summary judgment may be granted.  Id.  Therefore, an employer can obtain summary judgment

3

in one of two ways: It can demonstrate that the plaintiff's evidence fails to establish a prima
facie case or it can present a legitimate, nondiscriminatory reason about which the plaintiff does
not create a valid factual dispute.  Mitchell v. Data Gen. Corporation, 12 F.3d 1310, 1316 (4th
Cir. 1993).

### III.    Plaintiff Failed to Exhaust his Adminstrative Remedies

The Rehabilitation Act requires that federal employees must exhaust the administrative
remedies applicable to Title VII cases before initiating a lawsuit.  Milbert v. Koop, 830 F.2d 354
(D.C. Cir. 1987) (finding that Title VII and its exhaustion requirements were incorporated by the
Congress into the relevant portion of the Rehabilitation Act).

### A.    Administrative Procedures and Exhaustion Requirements

Federal employees may file a civil action only after exhausting their administrative
remedies before the concerned Federal agency.  42 U.S.C. § 2000e-16(c).  Under rule-making
authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the EEOC has "established
detailed procedures for the administrative resolution of discrimination complaints, including a
series of time limits for seeking informal adjustment of complaints, filing formal charges, and
appealing agency decisions to the Commission."  Bowden v. United States, 106 F.3d 433, 437
(D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  The
EEOC's regulations provide that "aggrieved" employees or applicants for employment who
allege they have been discriminated against must first consult an agency EEO counselor before
filing a complaint of discrimination and must do so within 45 days of the "matter alleged to be
discriminatory or, in the case of personnel action, within 45 days of the effective date of the
action."  29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved through informal counseling, the aggrieved employee must, within 15 days, file a written complaint with the agency that allegedly discriminated against him. 29 C.F.R. § 1614.106(a)-(c).  The agency must investigate the matter within 180 days or reject the complaint and issue a final dismissal.  Id. at § 1614.106(d)(2).  At the conclusion of the agency's investigation, the complainant may request a hearing before an EEOC administrative judge or an immediate final decision by the agency.  Id. at § 1614.108(f).

A complainant who receives an adverse final decision from the agency may appeal that decision to the EEOC within 30 days, or may file a civil action within 90 days.  42 U.S.C. 2000e-16(c); 29 C.F.R. 1614.408; see also Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996); Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 246 (3d Cir. 1999).  A complainant also may file a civil action at any time after a complaint has been pending before the agency or the EEOC for at least 180 days.  42 U.S.C. 2000e-16(c); 29 C.F.R. 1614.408.

Compliance with these procedures and time lines is mandatory.  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  Bowden, 106 F.3d at 437; Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action").  As the U.S. Supreme Court stated in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S. Ct. 2486, 2497 (1980)).

B.     <u>Plaintiff Failed to Exhaust Most of his Claims</u>

Plaintiff alleges three causes of action: 1) Failure to Accommodate; 2) Disability

Harassment; and 3) Retaliation.  Plaintiff failed to exhaust his administrative remedies for most

of the claims that constitute his causes of action.  Plaintiff filed two administrative complaints

alleging discrimination; dated September 20, 2002 and April 9, 2003.  Exhibit B and C, ROI,

Formal Complaint.  On or about September 5, 2003, Defendant informed Plaintiff that his cases

were consolidated and that it accepted for investigation only one of Plaintiff's claims; that

Plaintiff was allegedly discriminated against based on mental disability (PTSD/Major

Depression) and retaliation (Prior EEO Activity) when: 1) On March 25, 2002, he received a

denial of his request for reasonable accommodation.  Exhibit D, ROI, Issues to be Investigated.

The EEOC issued an Acknowledgment Order on April 6, 2005 informing Plaintiff that he had 30

days to appeal any claims that the Defendant had dismissed from the complaint.  Exhibit F, ROI

Pleadings, Tab 1 at 2.  Plaintiff did not appeal any dismissed claims.

1.     *Failure to Accommodate*

Plaintiff failed to exhaust all five of the alleged incidents that constitute his failure to

accommodate cause of action in the complaint.  Plaintiff alleges that the Postal Service failed to

accommodate him by:  1) denying him leave from February 9, 2000 through May 8, 2000, the

period for which he was placed on absent without leave ("AWOL") AWOL status (<u>see</u> Compl. at

¶ 71); 2) attempting to place Plaintiff in an AWOL status and remove him in October 2000 and

February 2003 (<u>see</u> Compl. at ¶ 72); 3) denying him his requested accommodations in August

and September 2001 (<u>see</u> Compl. at ¶ 73); 4) failing to engage in what he refers to as an

"interactive good faith process" by failing to properly process a reasonable accommodation

request; meet or talk with Mr. Ziegler; reviewing all of his past and then current medical records in his USPS medical file (see Compl. at ¶¶ 74, 76, 77, 78); and 5) engaging in undue delay by taking almost 6 months from September 2001 to March 2002 to deny his accommodation request (see Compl. at ¶ 75).

None of these claims were accepted to be investigated by the Defendant at the administrative level and Plaintiff did not appeal the absence of any claim from his administrative complaint during his administrative hearing process.    Exhibit D, ROI, Issues to be investigated.

2.    *Disability Harassment*

Plaintiff failed to exhaust eight out of nine alleged incidents that constitute his disability harassment cause of action in the complaint.[1]  Plaintiff alleges that Defendant discriminated when Defendant: 1) refused to accept medical documentation and attempted to remove Plaintiff on Oct. '00 and Feb. '03; 2) refused to process Plaintiff's OWCP forms for 1 year; 3) Defendant refused to release EVA bonus check; 4) continually requested medical documentation when plenty had already been provided;[2] 4) failed to engage in good faith interactive process on accommodation request in Aug and Sept. '01; 5) failed to respond to accommodation request for 6 months; 6) denied accommodation in Aug. '01 and March '02 without justification; 7) gave false information to EEO Dispute Resolution Specialist by saying in July '03 they hadn't heard or seen from Plaintiff in over 2 years; and 8) continually ignored and refused to provide OWCP and VA info requested to process Plaintiff's disability claims.  See Complaint at ¶ 84.

---

[1]  In the Complaint at ¶ 84, Plaintiff misnumbered his nine allegations by listing the number 4 twice.

[2]    See footnote 1.

Only part of one of these claims was accepted to be investigated by the Defendant at the administrative level and Plaintiff did not appeal the absence of any claim from his administrative complaint during his administrative hearing process.  Exhibit D, ROI, Issues to be investigated. Plaintiff failed to exhaust his administrative remedies with regard to six claims - numbered 1, 2, 3, 4[3], 7, and 8 - because: they were not raised within 45 days of the alleged incident and/or not raised at all with an EEO counselor.  See Exhibit G, ROI, Counselor's report, p. 1, 12 and Comp. at ¶ 84.  Claims 3 and 4[4] were previously dismissed at the EEO level for Plaintiff's failure to timely contact an EEO counselor.  ROI, Issues to be Investigated.  The only claim that was accepted by the Defendant to be investigated and then exhausted by Plaintiff is part of claim 6, that Defendant allegedly discriminated against him by denying accommodation in March '02 without justification.  See Exhibit E, ROI Pleadings, Tab 15, April 26, 2006 Administrative Judge Decision.

    *3.*     *Retaliation*

Plaintiff failed to exhaust all nine alleged incidents that constitute his retaliation cause of action in the complaint.  Plaintiff alleges that Defendant retaliated against him by: 1) refusing to process Plaintiff's CA-2 OWCP forms (Compl. at ¶ 88); 2) denying without justification his Aug. '01 requests to return to work with his reasonable accommodations (Compl. at ¶ 88); 3) refusing to engage in good faith about his reasonable accommodation request (Compl. at ¶ 88); 4) unjustifiably withholding his EVA bonus check (Compl. at ¶ 88); 5) refusing to respond to VA and OWCP repeated request for information, thus delaying Plaintiff's claims (Compl. at ¶

---

[3]  The numbered 4 first listed in the Complaint at ¶ 84.

[4]  The numbered 4 first listed in the Complaint at ¶ 84.

8

88); 6) charging Plaintiff with AWOL in Feb. '03 and with failing to provide medical documentation since March '00 (Compl. at ¶ 90); 7) refusing leave slips and Plaintiff's medical documentation in March '03 in response to AWOL charges (Compl. at ¶ 90); 8) providing false information to an EEO Dispute Specialist in July '03 when Defendant claimed it had not seen or heard from Plaintiff in over 2 years (Compl. at ¶ 90); and 9) continually refusing to provide information requested by OWCP which caused Plaintiff's OWCP to be denied for second time in Feb. '03 (Compl. at ¶ 90).  Compl. at ¶¶ 88, 90.

None of these claims were accepted to be investigated by the Defendant at the administrative level and Plaintiff did not appeal the absence of any claim from his administrative complaint during his administrative hearing process.    Exhibit D, ROI, Issues to be investigated. These claims were not exhausted because they were not raised within 45 days of the alleged incident and/or not raised at all with an EEO counselor.  See Exhibit G, ROI, Counselor's report, p. 1, 12 and Comp. at ¶ 84.  In addition, with regard to claim 4, it was previously dismissed at the EEO level for Plaintiff's failure to timely contact an EEO counselor.

**IV.    Plaintiff is not Disabled and Thus, Does Not State a Claim of Disability Discrimination**

Plaintiff does not state a *prima facie* claim of disability discrimination because he is not disabled under the meaning of the Rehabilitation Act.  The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq., prohibits discrimination against qualified handicapped employees and job applicants.  To establish a *prima facie case* of discrimination for failure to accommodate, as asserted here, the plaintiff bears the burden of showing "(1) that he was an individual who had a *disability* within the meaning of the statute;  (2) that the employer had

notice of his disability;  (3) that with reasonable accommodation he could perform the essential functions of the position;  and (4) that the employer refused to make such accommodations." Brown v. Snow, 407 F. Supp.2d 61, 67.  Plaintiff cannot make out a *prima facie* case, because he has not alleged a disability within the meaning of the Act.

      1.      Plaintiff Is Not "An Individual With A Disability"

In pertinent part, the Rehabilitation Act defines an "individual with a disability" as a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities."  29 U.S.C. § 705(20)(B).  As explained by the U.S. Supreme Court in Bragdon v. Abbott, ascertaining whether an individual meets this definition requires a three-step analysis.  118 S. Ct. 2196, 2202 (1998).  First, the court must determine whether the individual's condition constituted a physical or mental impairment.  Id.  Second, the court must "identify the life activity on which [the plaintiff] relies" and determine whether it constitutes a major life activity.  Id.  And third, the court must determine whether the physical or mental impairment "substantially limited" the major life activity in question.  Id.  As the Court emphasized in the recent case of Toyota v. Williams, "merely having an impairment does not make [an individual] disabled."  122 S.Ct. 681, 690 (2002).  Instead, a plaintiff must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial.'"  Id. at 691-692.  To qualify as "substantial," "the impairment's impact must also be permanent or long-term."  Id. at 691; compare Paegle v. Dep't of the Interior, 813 F. Supp. 61, 64 (D.D.C. 1993), aff'd, 24 F.3d 1464 (D.C. Cir. 1994) ("The [Rehabilitation] Act identifies a handicap as a severe disability of a permanent nature").  In sum, the terms of the disability definition must be "interpreted strictly to create *a demanding standard*

*for qualifying as disabled*." Toyota, supra, 122 S.Ct. at 691 (emphasis added).

For the relevant time period in question, the Plaintiff failed to provide sufficient evidence that he was substantially limited in a major life activity.[5]  In fact, the pertinent information provided to the Defendant from his treating doctor indicated just the opposite:  that he was not substantially limited in any major life activity and that "his depression (had) lifted to the point that there are virtually no current symptoms."  Exhibit A, ROI, Exhibits 11.  In a letter dated September 27, 2001, Plaintiff's doctor responded to Defendant's request for additional medical information pertaining to Plaintiff's request for reasonable accommodation and wrote a letter dated September 27, 2001 which stated:

> Mr. Zeigler is diagnosed with Posttraumatic Stress Disorder.  He also has suffered from a secondary diagnosis of Major Depression.  However, he has made much progress in therapy and his depression has lifted to the point that there are virtually no current symptoms.   Although some symptoms of Postraumatic Stress Disorder still persist, they should not currently interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors.

> Mr. Zeigler's current impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing , hearing, speaking, breathing, learning or working.

(Emphasis Added).  Exhibit A, ROI, Exhibits 11.

Because Plaintiff's impairment had no significant impact on his major life activities, Plaintiff did not meet the standard for a qualified disabled person and can not state a claim for

---

[5] Though asked to provide information regarding his alleged disability and how it prevented him from performing the essential functions of his job, as well as major life activities affected, Plaintiff failed to fully provide such information.  Exhibit H, ROI, Investigative Report, p. 5.

disability discrimination, harassment or retaliation.

## V.    Hostile Work Environment Claim Fails

Plaintiff alleges that he suffered from a hostile work environment while he was away from work.  To prove hostile work environment, the plaintiff must demonstrate that:  (1) [he] is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) that the defendant knew or should have known of the harassment and failed to take prompt effective remedial action.   Brown v. Snow, 407 F. Supp.2d 61, 69;  Brown v. Small, 2005 WL 736530, *5 (D.D.C. Mar. 31, 2005).[6]

First, as noted previously, the Plaintiff has utterly failed to demonstrate that he is "disabled."  However, even assuming *arguendo* that the plaintiff is "disabled," his claim must still fail because he has not demonstrated that defendant's conduct was sufficiently severe or pervasive to be actionable under Title VII.[7]  For the most part, Plaintiff's allegations of hostile work environment involve the denial of his accommodation request as well as the processing of his request.  In reviewing defendant's alleged conduct, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct;  its severity;  whether it is physically threatening or humiliating, or a mere offense utterance;  and whether it

---

[6]  However, this Circuit has noted that whether the Rehabilitation Act provides a cause of action for hostile work environment is not definitely decided.   E.g., Kuraner v. Mineat, 2001 WL 936369 (D.C. Cir. 2001) (assuming, without deciding, that such a claim exists).
  [7]  "The courts that have addressed harassment in the context of disability claims apply the standards utilized in Title VII hostile work environment claims."  Brown, 407 F. Supp.2d 61.

unreasonably interferes with an employee's work performance." Harris v. Forklift Sys, Inc., 510 U.S. 17 (1993). Based on this standard, the plaintiff's allegations, such as they are, do not "create an objectively hostile or abusive work environment." Id. at 21-22. "[A] workplace environment becomes hostile for the purposes of Title VII only when offensive conduct permeates the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (internal quotations and citations omitted). Here, the Plaintiff was not at work during the period of the alleged harassment. Therefore, Plaintiff did not suffer from a hostile work environment.

## V.    **Retaliation Claim Fails**

### 1.    *Plaintiff can not establish a prima facie case of retaliation*

The plaintiff has failed to demonstrate a *prima facie* case for unlawful retaliation. To establish a *prima facie* case of unlawful retaliation, the plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that his employer took an adverse personnel action; and (3) that a causal connection existed between the adverse action and the protected activity. Singletary v. District of Columbia, 351 F.2d 519, 524 (D.C. Cir. 2003); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999). Causation may be established by showing that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985); see also Cones v. Shalala, 100 F.3d 512 (D.C. Cir. 2000) (strong timing evidence alone is sufficient to show a causal connection).

Plaintiff cannot establish the requisite temporal proximity between Plaintiff's previous protected activity and his only exhausted claim that Defendant allegedly refused his accommodation request based on disability discrimination.[8]  Considering the 18 month lag, there is simply no causality between Plaintiff's October 14, 2000 appeal of his removal and Defendant's alleged March 2002 retaliatory conduct.  See Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001) (finding that a 20-month lag suggests no causality at all) (quoting with approval cases finding 4-month and 3-month lags insufficient to establish causality); Wilson v. SunTrust Bank,119 Fed.Appx. 291, 292, 2004 WL 2958303 at *1 (D.C. Cir. Dec. 21, 2004) (fifteen months between filing a complaint and termination is too long to raise an inference of retaliation); Hoffman-Dombrowski v. Arlington International Racecourse, Inc., 254 F.3d 644 (7th Cir. 2001) (thirteen month period insufficient to show causal connection between employee's complaint of sex discrimination and when she was denied promotion and transferred); Dowe v. Total Action Against Poverty, 145 F. 3d 653, 677 (4th Cir. 1998) (a seven-month time lapse "negates any inference that a causal connection exists between the filing of an EEO complaint and plaintiff's termination"); Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient to show causal link); Ball v. Tanoue, 133 F. Supp.2d 84, 92 (D.D.C. 2001) (finding that one-year time lag between protected activity and adverse employment action is too great to establish *prima facie* case of retaliation); Hastie v. Henderson, 121 F. Supp.2d 72, 80 (D.D.C. 2000) (passage of nearly two years between events prevents finding of a causal connection); Saunders v. DiMario, 1998 WL 525798 at *5 (D.D.C. 1998),

---

[8]  Although Plaintiff did not exhaust any of his retaliation claims in the complaint, he did exhaust a disability discrimination claim that Defendant allegedly refused to accommodate him based on disability discrimination in March 2002.

aff'd, 194 F.3d 175 (D.C. Cir 1999) ("The greater the time that elapses between the protected

activity and the alleged acts of retaliation . . . the more difficult it is to demonstrate any causal

connection and, absent any other evidence, where the gap is sufficiently great it is appropriate to

grant judgment for the defendant as a matter of law."); Devera v. Adams, 874 F. Supp. 17, 21

(D.D.C. 1995) (eight months does not strongly suggest causal link); and Garrett v. Lujan, 799 F.

Supp. 198, 202 (D.D.C. 1992) (lapse of one year too long to infer retaliation).   Here, a 20 month

lag is insufficient for Plaintiff to establish a causal link of retaliation.   Thus, Plaintiff can not

make out a *prima facie* case of retaliation.

  2. *Defendant has articulated a legitimate non discriminatory reason for its actions*

  Assuming arguendo that the Plaintiff had demonstrated a *prima facie* case for retaliation,

the Defendant articulated legitimate, non-discriminatory reasons for its actions and the Plaintiff

has not established that these reasons were a pretext for discrimination. See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 803-805 (1973).   The McDonnell Douglas burden-shifting

algorithm developed for Title VII applies equally in Rehabilitation Act cases.   Barth v. Gelb, 2

F.3d 1180, 1184 (D.C. Cir. 1993) ("courts allocating burdens of proof under the Rehabilitation

Act have been prone to adapt and employ the familiar principles of McDonnell Douglas as

elaborated by Burdine ").   The burden-shifting framework of McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 803-805 (1973), governs the analysis of Plaintiff's disparate treatment

discrimination and retaliation claims.   Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000);

Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999) (recognizing that claims of retaliation are

governed in this Circuit by the McDonnell Douglas burden-shifting framework) (citing Carney

v. The American University, 151 F.3d 1090, 1094 (D.C. Cir. 1998)).

15

Under the <u>McDonnell Douglas</u> test, the plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination or retaliation. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to produce credible evidence that its actions were taken for a legitimate, nondiscriminatory reason. <u>Id.</u> If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason was pretextual.

Here, Defendant articulated a legitimate nondiscriminatory reason for the decision to deny Plaintiff's request for reasonable accommodation. Defendant denied the request because the information available to Defendant concerning Plaintiff's alleged claim of disability revealed at that time that he was not a disabled individual pursuant to the Rehabilitation Act. The Plaintiff's own doctor and treating clinician at the time, Dr. Jayson, stated in a letter regarding Plaintiff's condition that his "<u>current impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working</u>." ROI, Exhibit 11 (emphasis added). The Rehabilitation Act defines an "individual with a disability" as a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B). Therefore, Plaintiff was not disabled as defined by the Rehabilitation Act and Defendant properly denied his request for disability accommodation.

**CONCLUSION**

16

Based upon the foregoing, Defendant respectfully requests that Plaintiff's complaint be dismissed with prejudice or in the alternative, summary judgment be granted in Defendant's favor.

November 3, 2006                      Respectfully submitted,

                           _____/s/_____
                           JEFFREY A. TAYLOR, D.C. BAR # 498610
                           United States Attorney

                           _____/s/_____
                           RUDOLPH CONTRERAS, D.C. BAR # 434122
                           Assistant United States Attorney.

                           _____/s/_____
                           ANDREA McBARNETTE, D.C. Bar  # 483789
                           Assistant United States Attorney
                           555 Fourth Street, N.W.
                           Washington, D.C. 20530
                           (202) 514-7153

17

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT'S MOTION TO DISMISS OR,**

**IN THE ALTERNATIVE FOR SUMMARY JUDGMENT** was filed via the Court's

electronic filing system on this November 3, 2006 and is expected to be served by the Court's

electronic transmission facilities on:


Patricia Koh, Esq.
Law Offices of Koh & Koh
3 Leonard Court
Rockville, MD 20850
(301) 424-8757 Phone
(301) 762-9324 Fax




_____/s/_____
ANDREA McBARNETTE, D.C. Bar  #483789
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153