IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES E. ZEIGLER,                         :

        PLAINTIFF              :

                                         CASE NO. 06-1385 (RMC)

v.

                                :

JOHN E. POTTER,                           :
Postmaster General
U.S. Postal Service                       :

        DEFENDANT              :

**PLAINTIFF'S OPPOSITION  TO DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, James Zeigler, through Counsel, opposes Defendant's Motion to

Dismiss, Or In The Alternative For Summary Judgment and moves for partial summary

judgment, pursuant to Fed. R. Civ. P. 56.  Material facts available at this time are set

forth in the attached Statement of Material Facts in Dispute. Argument in support of

Plaintiff's Opposition and Motion for Partial Summary Judgment is discussed in the

accompanying memorandum of points and authorities.

                                     Respectfully submitted,

                                ____/s/_____

                                Patricia Koh
                                D.C.Bar No. MD 12093
                                Law Offices of Koh & Koh
                                3 Leonard Court
                                Rockville, MD 20850
                                (301) 424-8757
                                Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES E. ZEIGLER,                          :

                                                  Case No.06-1385 (RMC)

                PLAINTIFF                :

v.

                                   :

JOHN E. POTTER,                            :
Postmaster General
U.S. Postal Service                        :

                DEFENDANT                :

## STATEMENT OF MATERIAL FACTS  IN DISPUTE

The following material facts are set forth in the pleadings, and established by the

Record of Investigation (ROI) in this case.

### A.   Mr. Zeigler is Assaulted by a Supervisor in the Course of His Employment

1.     In April 1998, Mr. Zeigler, an American veteran and 16 plus year career

employee at  the United States Postal Service (USPS),  is assaulted by his then USPS

supervisor.  Compl. ¶  9-12

2.     After the USPS's mishandling of the assault incident, and the negative

treatment  Mr. Zeigler receives from other supervisors resulting from his reporting of

the incident to the Postal Inspector,  Mr. Zeigler suffers from depression

and hypertension related to work stress.   Compl. ¶ 13-17

2

**B.   In September 1998, Mr. Zeigler Begins Medical Treatment for Depression and Hypertension**

3.     Mr. Zeigler takes medical leave from work in August and September of 1998, and seeks treatment from his physician, Dr. Weisel, in September of 1998, and intermittently in 1999.  Compl. ¶ 18-20

**C.    Mr. Zeigler Goes on Extended Unpaid Medical Leave in February 2000 and is Diagnosed with Major Depression**

4.     By early February 2000, Mr. Zeigler depression worsens; he again takes leave from work to begin more intense medical treatment for his depression.  Compl., ¶ 21.

5.     By letter dated March 27, 2000, Mr. Zeigler's physician, Dr. Sukachevin, notifies the USPS Health Unit that Mr. Zeigler's "long history and recurrent symptomology" of depression going back to 1995, is consistent with chronic Major Depression, which was also recently diagnosed by a psychiatrist.  Dr. Sukachevin notes in his letter that Mr. Zeigler's  depressive symptoms include "decreased appetite", "poor concentration", and "suicidal ideation", and that his condition is "chronic, recurrent".   He estimates that Mr. Zeigler needs to be on antidepressants for at least seven months and "perhaps a lifetime".    Compl.,  ¶  23-25; EXHIBIT A (ROI- Exhibit #2)

6.     By letter dated July 24, 2000, Mr. Zeigler's psychiatrist, Dr. Patel, also notifies the USPS Health Unit that Mr. Zeigler's Major Depression is "severe enough to interfere with his social, occupational, and familial functioning"; that he will be seeing

a therapist, and that he "would benefit from medical disability."  Compl. ¶30;

EXHIBIT B (ROI- Exhibit #3)

**D.  The USPS Classifies Mr. Zeigler AWOL, and Unsuccessfully Attempts to Remove Him From Service**

7.    In October 2000, Mr. Zeigler's supervisors proceed to terminate him on

grounds of AWOL. Mr. Zeigler appeals the removal decision.  Compl. ¶ 31-32

8.    By letter dated November 2, 2000, Mr. Zeigler's therapist, Dr. Jayson, notifies

the USPS Health Unit that, in addition to his diagnosis of Major Depression, Mr.

Zeigler also suffers from Post Traumatic Stress Disorder (PTSD) relating back to

events in his childhood and military service of "traumatic proportions".  She further

states that his symptoms are "quite severe" and "interfere significantly with his social

and occupational functioning", such that every day incidents "tend to trigger

posttraumatic reactions in him and he is driven to much avoidance behavior that is

clearly maladaptive."  She concurs with Mr. Zeigler's psychiatrist, Dr. Patel, that his

disability is "severe enough to warrant medical disability."   Compl. ¶ 33; EXHIBIT C

(ROI-Exhibit # 4)

9.    On November 13, 2000, USPS Department of Human Resources and the EEO

Office of Compliance and Appeals issues a written decision rescinding the AWOL

removal of Mr. Zeigler, on grounds that the removal was "arbitrary and capricious

and not within the tolerable limits of reasonableness". The decision further states

that Mr. Zeigler's medical documentation previously provided to the USPS  "clearly

stated that the appellant was incapacitated for duty", and that the Agency had "clear

4

and conclusive evidence" that he "continued to be incapacitated for duty." Compl. ¶ 34; EXHIBIT D (ROI- p. 44-50 of Affidavit A)

### E.    Mr. Zeigler's Medical Condition Improves Over Time, and He Requests Reasonable Accommodation

10.    Mr. Zeigler continues to receive ongoing medical treatment, and weekly therapy with Dr. Jayson while on extended unpaid leave in 2001.  Compl. ¶ 37

11.    By letter dated August 2, 2001, Dr. Jayson notifies the USPS Medical Unit that she was clearing Mr. Zeigler, "who had been totally disabled since February 2000", to return to work under certain restrictions.  Comp. ¶ 38; EXHIBIT E (ROI- Exhibit #6)

12.    By letter dated August 14, 2001, Postmaster Delores Killette informs Mr, Zeigler that his request to return to work is denied because "his restrictions cannot be accommodated".   Postmaster Killette's letter does not indicate whether the accommodations Mr. Zeigler requested posed an undue hardship, and/or any reasons.  Compl.¶ 39; EXHIBIT F (ROI- Exhibit # 7)

13.    By letters dated August 30, 2001 and September 11, 2001 to the USPS District Manager, Postmaster, and USPS Medical Unit,  Dr. Jayson makes another reasonable accommodation request on Mr. Zeigler' s behalf, this time reducing the number of restrictions, except that Mr. Zeigler be:

a) assigned to a work location "where the stressors did not occur" (i.e., not where the workplace assault took place); b) that he not be exposed to the "persons causing the stressors"" (i.e, the supervisor who assaulted him); c) that he work 8am-4 pm,

Monday through Friday, not more than 40 hours per week;  d) that he work in

Montgomery County so that he can conveniently attend his therapy sessions; and

e)  that he be assigned a position in one of his areas of expertise which included

training and educational development, personnel and human resources

management, claims management, finance, marketing, accounting, quality

management, advertising, employee labor relations, safety health systems,

customer service and call center management.  Compl, ¶ 40-41; EXHIBITS G-1 and

G-2  (ROI- Exhibit # 8)

**F.     USPS Requests Additional Medical Documentation From Mr. Zeigler to Process His Reasonable Accommodation Request**

14.     On or around September 26, 2001, Mr. Zeigler receives in the regular mail a

letter dated August 27, 2001 from Christine Dailey of the USPS  District Reasonable

Accommodation Committee (DRAC).  The letter states that "[b]efore we can render

a decision in your case, we will need additional medical information from your

treating physician", including completion of "the attached Medical Restrictions Form"

and "Your physician's assessment of how the impairment impacts major life

activities, i.e. caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working."    No other "major life activities"

are mentioned in this letter, or explanation given as to any legal meaning of the term

"major life activities".   The letter requests that the information be forwarded to the

USPS Health Unit.  Compl. ¶ 42; EXHIBIT H; (ROI-Exhibit # 10)

14.    The following day, Dr. Jayson, immediately sends Christine Dailey her written response consisting of a cover letter dated September 27, 2001, along with her completed Medical Restrictions Form which addresses physical restrictions (such as sitting, standing, walking, etc.).  Dr. Jayson adds handwritten notations on the Form regarding Mr. Zeigler's mental disability, PTSD, which she states are "permanent"; and lists the accommodations that are necessary.   Dr. Jayson's cover letter informs that Mr. Zeigler "has made much progress in therapy and his depression has lifted to the point there are virtually no current symptoms".  Dr. Jayson also informs Ms. Dailey that "some symptoms of Posttraumatic Stress Disorder still persist [but].. they should not interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors".  In response to the USPS's inquiry of:   "how the impairment impacts major life activities, i.e. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working", Dr. Jayson answers by stating his "current impairment has no significant impact on his major life activities such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."   EXHIBITS I-1 and I-2 (ROI- Exhibit # 11)

**G.   After Dr. Jayson Provides the Requested Additional Medical Documentation on September 27, 2001 to the DRAC, Mr. Zeigler Receives No Communication From the USPS  For Nearly 6  Months Until Their March 2002 Denial of His Reasonable Accommodation Request**

15.      Following Dr. Jayson's September 27, 2001 submission of her cover letter and completed Medical Restrictions Form to the DRAC, Mr. Zeigler receives no communication from the USPS for approximately 6 months.  During this time, Mr. Zeigler writes to several Congresspersons for help.   Due to the stress and anxiety caused by this prolonged lack of response from the USPS, Mr. Zeigler's mental condition deteriorates.  In December 2001, Mr. Zeigler files for an increase in VA disability benefits due to his unemployability. The VA requests a response from the USPS, but the USPS fails to respond.   Compl. ¶ 44-45; EXHIBITS J, K (ROI-Affidavit A-p.27-8; p.31-32; p. 67-68)

16.      In March 2002, Mr. Zeigler receives a written memorandum dated March 15, 2002, from Charlynn Lancaster of the DRAC.  The memorandum falsely represents that the Committee had met with him (when they had not), and further informs Mr. Zeigler that his request for reasonable accommodation is denied, and that his file is being closed and that he is being referred back to Postmaster Delores Killette.  The memorandum states:

"Recently, the Reasonable Accommodation Committee met with you regarding your requested work place accommodation.  The committee reviewed this request and determined that reasonable accommodation is not required.  The Committee's decision is based on the fact that available medical records failed to establish that you are disabled in accordance with the Rehabilitation Act.

8

Since no accommodation is required, the committee is closing your file and

referring you back to Delores Killette, Postmaster.  We would like to thank you for

your participation in this process."

Compl.¶ 49-50; EXHIBIT K (ROI- Exhibit # 13)

17.    The DRAC's decision appears to be based solely on Dr. Jayson's September

27, 2001 cover letter.   EXHIBITS M, N  (ROI- Affidavit B- Christine Dailey and

Affidavit C- Charlynn Lancaster)

### H.  Mr. Zeigler Timely Contacts an EEO Counselor and Files A Formal EEO Complaint

18.    On April 2, 2002, Mr. Zeigler timely contacts an EEO Counselor after being

denied reasonable accommodation. EXHIBIT O (ROI- Counselor's Report. P.4)

19.    On September 7, 2002, Mr. Zeigler receives a Notice of Right to File

Individual Complaint from the EEO Counselor, and on September 20, 2002, Mr.

Zeigler timely files a formal EEO Complaint.  EXHIBIT P  (ROI Formal Compl p7-8)

20.    On September 5, 2003, Defendant accepts Mr. Zeigler's claim of

discrimination based on mental disability (PTSD/Major Depression) and retaliation

when on March 25, 2002 he received a denial of his request for accommodation.

(Defendant's Exhibit D)

21.    On April 6, 2005, the EEOC issues an Acknowledgment Order. (Defendant's

Exhibit F)

9

22.    On April 26, 2006,  Administrative Judge Furcolo grants the USPS Motion

To Decision Without a Hearing on the issues of whether Mr. Zeigler was

discriminated against on the basis of his disability (mental) and in reprisal (prior EEO

activity, when on March 25, 2002, his request for reasonable accommodation was

denied.    ( Defendant's Exhibit E)

23.    On May 2, 2006, the USPS issues a Notice of Final Action implementing the

decision of the Administrative Judge.  EXHIBIT Q


Respectfully submitted,


_____/s/_____
Patricia Koh
D.C.Bar No. Md 12093
Law Offices of Koh & Koh
3 Leonard Court
Rockville, MD 20850
(301) 424-8757
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES E. ZEIGLER,                    :
                                                      Case No.06-1385 (RMC)

       PLAINTIFF          :

v.

                         :

JOHN E. POTTER,                    :
Postmaster General
U.S. Postal Service                  :

       DEFENDANT          :

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   STANDARD OF REVIEW

A.  Rule 12(b)(6) Motions:

A Court must treat a motion to dismiss as one for summary judgment when matters outside of the pleadings are presented.  Fed. R. Civ. P.12(b)(6)   Here, the Defendant has proffered matters outside of the pleadings, so his Motion must be considered as one for summary judgment.

B.  Summary Judgment Motions:

In determining whether to grant summary judgment, the role of the fact-finder is not to weigh the evidence and render a determination as to the truth of the matter, but

only to determine whether a genuine dispute of material fact exists.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  An issue is "genuine" if the evidence is such that a reasonable fact-finder could find in favor of the non-moving party. *Celotex Corporation v. Catreet*,  477 U.S. 317 (1986).  A "material fact" is one that is a significant factor in proving or disproving a party's case. *Anderson,* 477 U.S. at 248.

The moving party has the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 322.   The evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences from the facts drawn in that party's favor.  *Anderson,* 477 U.S.  at 255. Consideration extends to the depositions, answers to interrogatories, documents produced, and affidavits that contain direct or circumstantial evidence that show a genuine issue for trial.  *Celotex,*  477 U.S. at 317, 324.    Unless the evidence so overwhelmingly favors "the movant as to permit no other rational conclusion, judgment as a matter of law is inappropriate." *Greene v. Safeway Stores*, 98 F.3d 554,557 (10th Cir. 1996).

All credibility questions, in particular, must be resolved in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Mason v . New Yorker*, 501 U.S. 496, 520 (1991).  In employment discrimination cases, especially, a trial court  must be "particularly cautious about granting summary judgment when the employer's intent is an issue." *Robinson v. Time Warner, Inc.*, 92 F. Supp. 2d 318, 328 (S.D.N.Y. 2000) A plaintiff need not try the case on paper to avoid summary judgment, particularly when the determination of the matter turns on issues of credibility, motivation, mental state,

and the range of permissible inferences to be drawn from the facts alleged by the non-movant. *Delaria v. American Gen. Fin.*, 998 F. Supp 1050 (SD Iowa 1998).

## II.   PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR HIS DISABILITY DISCRIMINATION FAILURE TO ACCOMMODATE CLAIM

The record shows that Mr. Zeigler, pursuant to 29 C.F.R. § 1614.105(a),  timely contacts an EEO  Counselor on April 2, 2002, after the USPS denies him reasonable accommodation in March of 2002.  Mr. Zeigler next timely files a formal EEOC Complaint on September 20, 2002, and  the USPS accepts his claim of discrimination based on mental disability (PTSD/Major Depression) and retaliation when on March 25, 2002 he received a denial of his request for accommodation.  Thereafter, an EEO Investigation on those issues is conducted, and Mr. Zeigler timely elects a hearing before an Administrative Judge.

EEOC Administrative Judge Furcolo in Agency Case No. 4K-200-0166-02 considers the issue of whether Mr. Zeigler was discriminated against on the basis of disability (mental) and reprisal (prior EEO activity), when on March 25, 2002, his request for reasonable accommodation was denied.  Both parties at this administrative level conduct discovery and file various pleadings.

On April 26, 2006,  Judge Furcolo grants the USPS's Motion For Decision Without a Hearing.  On May 2, 2006, the USPS issues a Notice of Final Action implementing the decision.

Defendant argues in its present Motion that Mr. Zeigler failed to exhaust "all five of the alleged incidents that constitute his failure to accommodate cause of action in the complaint", and therefore his failure to accommodate discrimination claim must be dismissed.    The alleged "incidents" Defendant refers to, however, are not separate "discrete" acts of discrimination for which administrative exhaustion  applies. *Nat'l R.R. Passenger Corp*.v *Morgan*, 536 U.S. 101 (2002).    Rather, the alleged incidents are acts by the Defendant that support Mr. Zeigler's failure to accommodate claim but cannot individually by themselves be readily identifiable as single acts of failure to accommodate discrimination.

In  *Nat'l R.R. Passenger Corp*.v *Morgan, supra,*  a "discrete" discriminatory act "occurred" on the day that "it happened".    Mr. Zeigler's actionable failure to accommodate claim occurred when the Defendant denied Mr. Zeigler reasonable accommodation.  Alleged incidents such as the Defendant's failure to engage in a good faith interactive process; failure to consider all of his medical documentation; unreasonable delay in responding to his request for accommodation are not single discriminatory  acts occurring on specific days for which Mr. Zeigler could have even filed separate claims within specific statutory time limits.    These alleged "incidents" are simply factual allegations tending to support Mr. Zeigler's failure to accommodate claim for which a fact finder may assess and properly draw inferences from.

Furthermore, these allegations and factual issues were raised and discussed at the Administrative level in the Defendant's Motion for Decision Without a Hearing, and Mr. Zeigler's Opposition, and Judge Furcolo issued his merits decision.  At no time

during these administrative proceedings did Defendant raise any defenses or objections

to these issues being heard, so in any event, Defendant waived such defenses.   *Ester*

*v Principi*, 250 F.3d 1068 (7th Cir. 2001); *Bowden v United States*, 106 F. 3d 433 (D.C.

Cir. 1997)

Defendant's Motion to dismiss Plaintiff's failure to accommodate claim on

grounds that the Plaintiff failed to exhaust his administrative remedies should be denied.

III.   Burden of Proof under the Rehabilitation Act

The Rehabilitation Act provides that:

No otherwise qualified individual with a disability … shall, solely by reason of her
or his disability, be excluded from the participation in, be denied the benefits of, or be
subjected to discrimination under any program or activity… conducted by an Executive
agency…      29 U.S.C.A. § 794(a)

The Rehabilitation Act defines the term  "individual with a disability" as any individual

who:

(i) has a physical or mental impairment that substantially limits one or more major
life activities;

(ii)  has a record of such an impairment; or

(iii)  is regarded as having such an impairment.

29 U.S.C.A. § 705(2)(B);  29 C.F.R. §1630.2(g)

An individual whose impairment "substantially limits" a major life activity is one

who is unable to perform a major life activity that the average person in the general

population can perform; or is significantly restricted as to the condition, manner, or

duration under which an individual can perform a major life activity as compared to the

condition, manner, or duration under which the average person in the general

population can perform the same major life activity.   29 C.F.R. § 1630.2(j)(1);

29 C.F.R. 1630.2(j)(2)(ii)

   "Major Life Activities"  are those "that are of central importance to daily life" such

as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning, and working."   29 C.F.R. § 1630.2(i)      Major life activities are

broadly defined.      *Bragdon v Abbott*, 524 U.S. 624 (1998)   They are those kinds of

activities "of central importance to most people's lives". *Toyota Motor Manufacturing*

*Kentucky, Inc.  v Williams*, 534 U.S. 184, 197 (2002)

   Factors considered in determining whether an individual's impairment

substantially limits a major life activity are: the nature and severity of the impairment; the

duration or expected duration of the impairment; and the permanent or long term

impact, or expected permanent or long term impact, of or resulting from the impairment,

taking into account any mitigating measures.  The impairment must be of a serious

nature and not merely transitory.  29 C.F.R. § 1630.2(j)(2), see also *Fraser v. Goodale*,

342 F.3d 1032 (9th Cir. 2003)

   The Rehabilitation Act expressly incorporates the standards of the ADA claims of

employment discrimination.  29 U.S.C. § 791(g)

A .  Failure to Accommodate Claim Under the Rehabilitation Act

   In order to make a failure to accommodate claim,  a plaintiff must establish that:

   (1)    [he] was an individual with a disability within the meaning of the
   statute;

   (2)    that the employer had notice of [his] disability;

(3)    that with reasonable accommodation [he] could perform the essential functions of the position; and

(4)    that the employer refused to make such accommodations.

*Lester v Natsios*, 290 F. Supp. 2d 11, 23 (D.D.C. 2003), citing *Scarborough v Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Under Federal regulations:

An employer is required to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would be an undue hardship. 29 C.F.R. §§ 1614.203(c);1630.9;1630.15(d)    An employer who fails to do so discriminates against the individual.    42.U.S.C. § 12112(b)(5)(A)

B.    Mr. Zeigler was An "Individual With a Disability"

Mr. Zeigler can make a *prima facie case* that he was an "individual with a disability" under the Rehabilitation Act.   PTSD and Major Depression are recognized mental impairments under the Rehabilitation Act and the ADA.    *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities.*

From the time Mr. Zeigler went on leave in February 2000, the USPS was put on more than sufficient notice that Mr. Zeigler suffered from Major Depression and PTSD. Ample medical documentation from his physicians, psychiatrist, and therapist were provided to the Defendant prior to Mr. Zeigler requesting reasonable accommodation in August of 2001.  The medical documentation substantiated Mr. Zeigler's extended

medical leave; and informed the Defendant, among other things, that Mr. Zeigler had a long history of depression going back to his childhood and service in the U.S. Navy; that he was diagnosed with chronic and recurrent  Major Depression and Post Traumatic Stress Disorder (PTSD); that his mental disability was permanent; that his mental disability was severe; that his mental disability severely affected his familial and social functioning; that he had poor concentration, social avoidance behavior that was clearly maladaptive, and suicidal ideation; and that he was receiving ongoing medical treatment and weekly therapy with his treating psychologist. (EXHIBITS A,B,C,D)

The ability to interact with others, concentrate, and sleep are all "major life activities" under the Rehabilitation Act.  *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*    The Defendant had clear notice when Mr. Zeigler requested reasonable accommodation in August 2001, that his mental disability had prior to his accommodation request, severely affected, at the very least,  his ability to interact with others, and concentrate.

Furthermore, on November 13, 2000, the Agency's EEO Compliance officer, Kathleen Eley, along with a USPS Human Resources manager,  relied upon Mr. Zeigler's medical documents, in rescinding the USPS's prior removal of Mr. Zeigler for AWOL.  The written decision discusses the medical documentation in the USPS's possession which justified Mr. Zeigler's medical leave, and concludes that the Agency had "clear and conclusive evidence"  that due to Mr. Zeigler's mental disability, he was "incapacitated for duty" and that he "continued to be incapacitated for duty."    The

18

Agency was, in fact, also ordered to provide Mr. Zeigler with disability retirement information.  (EXHIBIT D)

Not only did Mr. Zeigler meet the first prong of the definition of an "individual with a disability" under the Rehabilitation Act- that he "has a physical or mental impairment that substantially limits one or more major  life activities"; he also satisfied the second and third prongs as well- that he "has a record of such an impairment; or "is regarded as having such an impairment".   29 U.S.C.A. § 705(2)(B);  29 C.F.R. §1630.2(g)

Mr. Zeigler asserts there is no genuine issue of material fact that he was an individual with a disability, and he moves for summary judgment on the issue of whether he was an  "individual with a disability" at the time he requested reasonable accommodation.

C.    The USPS's  Denial of Reasonable Accommodation Violate the Rehabilitation Act

During 2001, Mr. Zeigler remained on extended unpaid medical leave, electing not to take disability retirement.  At no time, did the USPS assert that his continued leave presented an undue hardship.    After extensive and continuous therapy, Mr. Zeigler's  condition significantly improved to a point in August 2001, when his therapist, Dr. Jayson, was ready to clear him to return to work, with accommodations essentially consisting of:

(1)    that he be assigned to a work location "where the stressors did not occur", i.e., not where the workplace assault took place;

(2)    that he not be exposed to the "persons causing the stressors" , i.e

19

the supervisor who had assaulted him;

(3)    that he work 8am-4 pm, Monday through Friday, not more than 40

hours per week;

(4)    that he work in Montgomery County so that he can conveniently

attend his therapy sessions; and

(5)    that he be assigned a position in one of his areas of expertise

which included training and educational development, personnel and human

resources management, claims management, finance, marketing,

accounting, quality management, advertising, employee labor relations,

safety health systems, customer service and call center management.

(EXHIBITS E, G-1, G-2)

At the time of these requests, Mr. Zeigler was "qualified" to perform the

essential functions of a variety of job positions.  He had over 15 years experience at

the USPS,  with managerial experience since 1986.  He met the job requisites for a

multitude of positions he had held throughout his career with the USPS.

Indeed, according to Dr. Jayson's letter dated September 27, 2001 to the

DRAC, Mr. Zeigler had "made much progress in therapy and his depression had

lifted to the point there are virtually no current symptoms.   Although, some

symptoms of Posttraumatic Stress Disorders still persist, they should not currently

interfere with his job performance as long as he is assigned to a work location where

the past stressors did not occur and as long as there is no exposure to the persons

causing the stressors." (EXHIBIT I-1)

A reasonable jury could conclude based on the record established in this

case that Mr. Zeigler was a "qualified individual with a disability" entitled to

reasonable accommodation, unless the USPS could make a proper showing of

undue hardship.    29 C.F.R. §§ 1614.203(c);1630.9;1630.15(d)

C.    Defendant Requests Mr. Zeigler to Provide Additional Medical Documentation
To Prove He Was Disabled, And Fails To Engage in a Good Faith Interactive
Process With Mr. Zeigler, Both In Violation of the Rehabilitation Act

Federal regulations governing reasonable accommodation require an interactive

process between the parties.  29 C.F.R. § 1630.2(o)(3); see also *Beck Univ. of*

*Wisconsin Bd. Of Regents*, 785 F.3d 1130,1135 (7th Cir. 1996).  This interactive process

includes good-faith communications between the employer and employee.


President Clinton's Executive Order 13164, *Requiring Federal Agencies to*

*Establish Procedures to Facilitate the Provision of Reasonable Accommodation*,

mandates federal agencies to establish effective written procedures for processing

reasonable accommodation requests.   The Defendant's own procedures for handling

reasonable accommodation requests are set forth in its EL-307 Handbook.  Some

pertinent parts applicable in this case include (see EXHIBITS R-1; R-2):

*Section 1-4.2 "Determining Who is A Person With a Record of a Disability"*.

*A person with a record of a disability is someone **who does not now, but sometime in the past**, had a medical condition that at that time substantially limited a major life activity.  Examples of persons with a record of disability may include:*

*- Someone who suffered from cancer but whose cancer is in remission.*

*- A person who had repeated hospitalizations and numerous period of leave for a long term or permanent ailment   (emphasis added)*

*Section 2-2.2  "Step Two: Identify the Abilities and Limitations of the Individual*

*The next step in the accommodation process continues as the interactive process to determine the physical and mental abilities of the employee or job applicant.  Of course, the individual is usually best able to tell you what he or she can and cannot do.*

***Therefore, discuss the job with the individual****. (emphasis added)*

*Section 2-2.2.3   "Employees"*

*For employees requesting reasonable accommodation, consider medical information that their physicians may provide to determine job-related limitations and how they could be overcome.  Other important sources of information that will assist you in defining the employee's abilities and limitations **include past medical records**, current medical evaluations, and past work history.  It may be necessary to schedule a medical evaluation to obtain a better understanding of the employee's abilities and limitations.*

(emphasis added)

*EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship*

*Under the American with Disabilities Act* also provides much guidance on the proper

procedure for handling reasonable accommodation requests.   The following is an

illustrative case on point example:

Example B.   One year ago, and employer learned that the employee had bipolar
disorder after he requested a reasonable accommodation.  The documentation provided
at that time from the employee's psychiatrist indicated that this was a permanent
condition which would always involve periods in which the disability would remit and the
intensify.  The psychiatrist's letter explained that during periods when the condition
flared up, the person's manic moods or depressive episodes could be severe enough to
create serious problems for the individual in caring for himself or working, and that
medication controlled the frequency and severity of these episodes.   Now, one year
later, the employee again asks for reasonable accommodation related to his bipolar
disorder.  Under these facts, the employer may ask for reasonable documentation on
the need for the accommodation (if the need is not obvious) **but it cannot ask for
documentation that the person has an ADA disability.  The documentation
provided one year ago established the existence of a long-term impairment that
substantially limits a major life activity.** (emphasis added)

Furthermore, if an employer denies reasonable accommodation, it must state the

specific reasons for the denial.      Once an accommodation's reasonableness is

established, the burden of proof shifts to the employer to provide case-specific evidence

to prove that a reasonable accommodation would cause an undue hardship.  See *U.S.*

*Airways, Inc. v Barnett*,  122 S. Ct. 1516, 1523 (2002).

*EEOC Enforcement Guideline on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (October 17, 2002) states:

"Generalized conclusions will not suffice to support a claim of undue hardship. Instead, undue hardship must be based on an individualized assessment of current circumstances that show a specific reasonable accommodation would cause significant difficulty or expense. "

The DRAC letter sent by Charlynn Dailey to Mr. Zeigler in September 2001 requesting additional medical information seeking to establish that Mr. Zeigler was an individual with a disability under the Rehabilitation Act was improper.  The USPS at that time, already had sufficient medical documentation which established that Mr. Zeigler had a substantially limiting mental disability.   Further, this letter was improper in its form to ask essentially what is a legal question, i.e.  "how the impairment impacts major life activities, i.e. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  (Exhibit  H).

The "DRAC's" decision to deny reasonable accommodation was admittedly based solely on Dr. Jayson's September 27, 2001 letter.  (Exhibits M,N)  None of Mr. Zeigler's past medical records were apparently considered, nor was any meeting between Mr. Zeigler and the DRAC ever discussed with Mr. Zeigler or conducted. The USPS utterly failed to engage in any kind of meaningful good faith interactive process.

Indeed, the DRAC's false representation in its March 2002 denial letter that it had "recently met" with Mr. Zeigler, when in fact Mr. Zeigler had received no communication whatsoever from the USPS for almost six months since its September 2001 request for additional  medical information, brings into serious question the USPS's  intent, credibility, and good faith handling of Mr. Zeigler's reasonable accommodation request. (Exhibit  L)

A reasonable jury could find that the USPS violated the Rehabilitation Act in denying Mr. Zeigler reasonable accommodation without any showing of undue hardship; and failing to engage in a good faith interactive process with Mr. Zeigler.


D.   The *McDonnell Douglas* Burden Shifting Analysis Does Not Apply in Reasonable Accommodation Claims

Defendant claims that the Plaintiff's disability discrimination claim brought under the Rehabilitation Act should be analyzed under the *McDonnell Douglas* burden shifting scheme illustrated in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973)

This Court has recently held, however, in *Lester*, supra, at 24 that: "Courts do not employ the *McDonnell Douglas* framework in evaluating a reasonable accommodation claim." *See Flemmings v Howard Univ.*, 198 F.3d 857, 860-61 (D.C. Cir. 1999); *Barth v Gelb*, 2 F. 3d 1180, 1186 (D.C. cir. 1993), *cert. denied*, 511 U.S. 1030 (1994).

Other Courts have similarly held that if the Plaintiff can prove by direct evidence that he is a qualified individual with a disability, then that could directly establish a violation of the Rehabilitation Act.   *Bultemeyer v Fort Wayne Community Schools*, 100F.3d 1281 (7th Cir. 1996)  "If the Agency should have accommodated [the

25

employee] and did not, then the Agency has discriminated against [the employee]. There is not need for indirect proof or burden-shifting." *Bultemeyer*, 100F.3d at 1283.; *Beck v University of Wisconsin Bd. of Regents*, 75 F3d 1130 (7th Cir. 1996); *Bombard v. Fort Wayne Newspapers, Inc* , 92 F.3d 560 (7th Cir. 1996) .

An employer is required to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would be an undue hardship. 29 C.F.R. §§ 1614.203(c);1630.9;1630.15(d)    An employer who fails to do so discriminates against the individual.    42.U.S.C. § 12112(b)(5)(A)

Defendant attempts to rely on  Dr. Jayson's September 27, 2001 letter which stated that Mr. Zeigler's "current impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working."    The Defendant's reliance on this letter as its legitimate, non-discriminatory reason for denying Mr. Zeigler reasonable accommodation is in error, and does not absolve the Defendant from liability. *McDonnell Douglas* burden shifting analysis has no relevance or application in failure to accommodate claims under the Rehabilitation Act.

CONCLUSION

For the reasons stated above, Mr. Zeigler respectfully requests that the Court:

(1)     deny the Defendant's Motion to Dismiss, Or In the Alternative Motion

        for Summary Judgment; and

(2)     grant partial summary judgment in favor of Mr. Zeigler on the issue of

        whether he was an "individual with a disability".


                              Respectfully Submitted,


                              _____/s/_____
                              Patricia Koh
                              D.C.Bar No. Md  12093
                              Law Offices of Koh & Koh
                              3 Leonard Court
                              Rockville, MD 20850
                              (301) 424-8757
                              Attorney for Plaintiff

**CERTIFICATE OF SERVICE**


I hereby certify that on this 21st day of November 2006, the foregoing PLAINTIFF'S OPPOSITION  TO DEFENDANT'S MOTION TO DISMISS,  OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT was electronically filed with the Court, and is expected to be served electronically by the Court's on:

Andrea McBarnette, Esq.
Assistant US Attorney
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20530
(202) 514-7153



_____/s/_____
Patricia Koh
D.C.Bar No.  Md 12093
Law Offices of Koh & Koh
3 Leonard Court
Rockville, MD 20850
(301) 424-8757
Attorney for Plaintiff



# ASSOCIATES IN FAMILY PRACTICE, P.A.

John Kijak, Jr., M.D., ABFP
Adolph W. Johnson, Jr., M.D., ABFP
Brian L. Glenn, M.D., ABFP
C. Jon Sukachevin, M.D., AAFP

12520 Prosperity Drive, Suite 150
Silver Spring, MD 20904-1661
301-622-6020
Fax 301-622-xxxx

March 27, 2000

Dr. Thomas Lawford & Doris Saunders
Health Unit
Room 1052
900 Brentwood Rd.
Washington, D.C. 20066

Dear Dr. Lawford and Ms. Saunders:

I am writing on behalf of James Zeigler, who I have been treating for depression and hypertension. He has had a history of several depressive episodes since October 2, 1995. He has been seen by other physicians in our office. As I only recently joined the practice, my first visit with him was Nov. 15 at which time he was less depressed than he is now and only on St. John's Wort. On March 1, he returned with the complaints of depression, decreased appetite, poor concentration, and suicidal ideation. He had not been to work since Feb. 8 because of his difficulties with depressive symptoms. He was subsequently referred to a psychiatrist. On Mar. 15 he was seen for a routine followup visit and states that he was started on Zoloft and Trazodone.

Mr. Zeigler is currently on Trazodone, Zoloft, Ambien, Norvasc, and HCTZ. Since he has only recently started seeing the psychiatrist, he has asked me to write this letter for him. I have not received the psychiatrist's consult letter back yet; however, his long history and recurrent symptomology is consistent with a diagnosis of Major Depression, which he states he was diagnosed with by the psychiatrist. Of course, his condition is chronic, recurrent. My estimation is that he will need to be on antidepressants for at least seven months, perhaps a lifetime. I do not think he can deal with the current work situation in his state of mind as he has been on the antidepressants for less than one month. As you are aware of antidepressants usually take 4-6 weeks for an adequate therapeutic trial.

If you have any questions or if I can be of further assistance, please do not hesistate to contact me at (301) 622-6020.

Sincerely,

C. Jon Sukachevin, M.D.

Exhibit __2__
Page __1__ of __1__

EXHIBIT
A



**SMITA H. PATEL, M.D.**

Diplomate American Board of Psychiatry & Neurology

11161 New Hampshire Ave., Suite 420

Silver Spring, Maryland 20904

Telephone: (301) 754-3600

**July 24, 2000**


**Dr. Thomas Lawford & Doris Saunders**
**Health Unit**
**Room 1052**
**900 Brentwood Road**
**Washington, DC 20066**

<u>**Re:**</u>   <u>**James Zeigler**</u>

**Dear Dr. Lawford and Ms. Saunders:**

**James Zeigler had an Initial Psychiatric Evaluation on 03/04/00, and has been diagnosed as having Major Depression (296.32), his current medications are Paxil 30mg. QD and Trazadone 50mg. QHS. His condition is severe enough that it interferes with his social, occupational and familial functioning. He is unable to work and would benefit from medical disability. He is currently seen for medication management by me and will be seeing a therapist.**

**If I can be of further assistance, please do not hesitate to contact me.**

**Sincerely,**

**Smita H. Patel, M.D.**


**SHP:pdf**

Exhibit ___3___
Page ___1__ of __1__

EXHIBIT
B

**Diane F. Jayson, Ph.D.**
**11923 Parklawn Dr. #202**
**Licensed Psychologist**
**Rockville, MD 20852**
**(301) 984-5715**
**fax: (301) 881-1150**

November 2, 2000

Dr. Thomas Lawford and Doris Saunders
Health Unit
Room 1052
900 Brentwood Rd.
Washington, D.C. 20066

Re: James Zeigler

Dear Dr. Lawford and Ms. Saunders,

I have been treating Mr. James Zeigler in weekly outpatient psychotherapy since September 11, 2000. He has a history of Major Depression, which you should have documentation of from his psychiatrist, Dr. Smita H. Patel, M.D. In addition, I have diagnosed him with Posttraumatic Stress Disorder. This diagnosis is based on the symptoms described by Mr. Zeigler, along with his recent recollection of a traumatic event he experienced while in the military and a childhood event of traumatic proportions, as well. Mr. Zeigler's symptoms are quite severe and interfere significantly with his social and occupational functioning. Everyday incidents tend to trigger posttraumatic reactions in him and he is driven to much avoidance behavior that is clearly maladaptive. His disability is severe enough to warrant medical disability.

Please contact me if you need further information or assistance.

Sincerely,

Diane F. Jayson, Ph.D.
Licensed Psychologist

Exhibit 4
Page 1 of 1

EXHIBIT
C

. Manager Human Resources
Capital Metro Operations


**UNITED STATES**
**POSTAL SERVICE**

November 13, 2000

James E. Zeigler
14310 Blackmon Drive
Rockville MD  20853-2142

RE: ELM 650 Appeal in the Matter of James E. Zeigler, Customer
Service Finance Supervisor, Capital District:  Notice of Removal

Dear Mr. Zeigler:

I have just completed my consideration of your appeal dated on
October 18, 2000, regarding the decision of John Cordell,
Manager, Customer Service Operations Area 2, dated October 4,
2000, removing you from the Postal Service, based upon the charge
of failure to meet the attendance requirements of your position
in the area of attendance due to being Absent Without
Leave/Permission(AWOL).  The following is the Step 1 decision of
the appeal and is rendered in accordance with the procedures
found in Section 652.22 of the Employee and Labor Relations
Manual (ELM).

My decision in this matter was reached after a thorough review of
the entire record, which included information provided by you and
the Agency.

The record shows that you, hereinafter referred to as the
appellant, were afforded your rights under applicable regulations
(ELM-650).  Furthermore, in accordance with ELM-650, the record
indicates that you initiated a timely request for an ELM-650 Step
1 decision.

As background, the record indicates that a Notice of Proposed
Removal dated June 22, 2000, was issued by Robert J. Paiva,
Manager, Customer Service Support.  The Notice of Proposed
Removal stated the following in part:

> **Failure to meet the attendance requirements of your**
> **position in the area of attendance due to being Absent**
> **Without Leave/Permission (AWOL)**
>
> On May 9, 2000, you were scheduled to report for duty
> at 8:00 a.m.  However, you failed to report for work
> and to notify your office that you would not be

Affidavit _A_
Page _44_ of _75_

EXHIBIT
D

16501 Shady Grove Road
Gaithersburg, VA  20898-9998

A letter (Documentation of Extended Absence) dated May 24, 2000, was sent to your address of record, instructing you to submit the following within one (1) calendar days from receipt of the letter:

1. PS Form 3971 (Request for Notification of Absence) and
2. Medical Certificate covering your absence from beginning through the present.

You failed to response to this letter, and you failed to report for duty thereafter. Therefore, you have been charged Absent Without Leave/Permission (AWOL) from May 9, 2000 to present.

The record establishes that you did not respond in writing or in person to John Cordell, Manager, Customer Service Operations, Area 2 in accordance with the appeal rights provided in the proposed notice. On October 4, 2000, Manager Cordell issued a Letter of Decision, in which he determined that the charges as stated in the Notice of Proposed Removal were fully supported.

The record then indicates that after receiving the Letter of Decision you filed an appeal dated October 18, 2000, and it was determined that the issues on appeal could be decided on the record and on written submissions by the appellant and Agency.

After consideration of the entire record, for the reasons set forth below, it is clear that the Postal Service did not meet its burden of proof and the decision to remove you from the Postal Service was not appropriate.

## PROCEDURAL ARGUMENTS

In your appeal, you raised the following two (2) procedural issues.

Issue #1: Appellant did not receive the proposed removal.

Information received from Management indicates the proposed adverse action was mailed via 1st class mail and certified with a return receipt. The evidence of record reveals the certified copy was returned to the Agency unclaimed.
Affidavit $A$
Page 45 of 75

However, the July 7, 2000, medical certification signed by C. Jon Sukachevin, M.D. and provided by the appellant states in part:

"I am again writing on behalf of James Zeigler, who I have treated for depression in the past. I understand that he

2

∑ ⅄ ⌐ ⌐ 6

has recently been proposed to be removed from the Postal Service because of absenteeism.  Although he is currently under the care of his psychiatrist, Dr. Smita Patel, for Major Depression, he asked me to write to clarify his situation."

Based on the statement by Dr. Sukachevin, it is clear that the appellant was aware of the proposed adverse action.  Therefore, I find this argument not credible.

Issue #2:  The Letter of Decision was dated October 7, 2000, but was not received until October 14, 2000.

Merit Systems Protection Board regulations require a 30-day advanced notice between the date of the proposed action and the effective date of the adverse action.  The proposed adverse action was dated June 22, 2000, and the effective date of the removal was October 7, 2000.  Therefore, the 30-day advance notice requirement was met.  The record is absent on if the Letter of Decision was actually mailed via 1st class mail and/or certified mail on October 4, 2000.  While the Letter of Decision gave the appellant 15 calendar days of his receipt to appeal to the Office of EEO Compliance and Appeals, it gave him 30 calendar days from the effective date of the decision to appeal to the Merit Systems Protection Board (MSPB).  Therefore, Management should have taken the necessary steps to ensure the Letter of Decision was received **before** the effective date.  If in fact, the appellant received the Letter of Decision on October 14, 2000, the Agency encroached upon seven (7) of his thirty (30) calendar days to appeal to the Merit Systems Protection Board.

### *THE DECISION TO REMOVE YOU WAS NOT PROPER.*

In any disciplinary action the agency must prove by a preponderance of the evidence that the individual to be disciplined actually committed the act(s) charged; the act(s) violated agency regulations(s); and the degree of discipline selected was the appropriate penalty. A preponderance of evidence standard is defined as the degree of evidence which taken as a whole, shows that the fact sought to be proved is more probable than not. (Black's Law Dictionary, Fifth Edition, 1979). Thus, in the instant matter, the agency has to prove by a preponderance of evidence that:

Affidavit _A_
Page _76_ of _75_

- Appellant was absent from duty May 9, 2000 to June 23, 2000;

- Appellant received a letter (Documentation of Extended Absence) instructing to submit (1) a PS

$\Sigma \chi - 3 - 6$

3

Form 3971; (2) Medical Certificate covering the absence;

- Appellant failed to provided the requested information;

- Appellant's failure to comply with established procedures for requesting and obtaining approval of leave in advance violated agency regulations; and ,

- Removal was the appropriate penalty.

After a review of the entire record, for the reasons discussed below, it is clear that the penalty of removal was improper.

The record of evidence establishes that the appellant's absence began February 9, 2000. Medical certification was provided by the appellant dated February 16, 2000, and March 27, 2000. The medical certification dated March 27, 2000, stated in part:

> "Mr. Zeigler is currently on Trazodone, Zoloft, Ambien, Norvasc and HCTZ. Of course, his condition is chronic, recurrent. I do not think he can deal with the current work situation in his state of mind as he has been on the antidepressants for less than one month. As you are aware of antidepressants usually take 4-6 weeks for an adequate therapeutic trial."

The record also contains correspondence dated February 23, 2000, March 1, 2000, and March 27, 2000, from the appellant to Rodney Payne, his supervisor, concerning his absence. In addition, the appellant provided copies of seven (7) PS Forms 3971, Request for or Notification of Absence, dated and signed May 9, 2000, which requested leave for the periods beginning May 9, 2000, June 9, 2000, July 9, 2000, August 9, 2000, September 9, 2000, October 9, 2000, and November 9, 2000. Each of the seven (7) PS Forms 3971 request sick leave and is annotated in the Remarks section "Medical Documentation Provided".

On May 24, 2000, a letter requesting a PS Form 3971 and medical certification was requested for the period beginning May 8, 2000.[1] There is no evidence that the appellant responded to the May 24, 2000, request for information. The record, however, does reflect that appellant pr medical certification dated July 7, 2000, July 14, 200

Affidavit _A_
Page 47 of 75

---

[1] It appears that Management derived the May 8 date from information contained in the March 27 2000, medical certification. Specifically, the certification stated in part "antidepressants usually take 4 – 6 weeks for an adequate therapeutic trial". Based on this, Management concluded the March 27, 2000, medical certification was good only for a 6 week period which ended on or about May 6.

EX-3-6

July 24, 2000. All of the medical certification submitted in July was addressed to Dr. Thomas Lawford & Doris Saunders, Health Unit, Room 1052, 900 Brentwood Road, Washington, DC. Evidence provided by the appellant reveals that at least one piece of the July 2000 medical certification was mailed via certified mail to the medical unit and to Rodney Payne, his supervisor.[2]

The July 14, 2000, medical certification states in part:

> "His condition is severe enough that it interferes with his social, occupational and familiar functioning. He would benefit from medical disability."

The July 24, 2000, medical certification states in part:

> "His condition is severe enough that it interferes with his social, occupational and familial functioning. He is unable to work and would benefit from medical disability. He is currently seen for medication management by me and will be seeing a therapist."

The Letter of Decision was dated October 4, 2000. This was 2+ months after the Agency received medical certification dated July 7, July 14 and July 24, 2000, which clearly stated the appellant was incapacitated for duty. In fact, the July 14 and July 24, 2000, medical certification advised the Agency the appellant would 'benefit from medical disability'. At the time the Letter of Decision was issued, the Agency had clear and conclusive evidence that the appellant continued to be incapacitated for duty.[3]

As stated above, the medical certification provided by the appellant dated July 14, July 24 and November 2, 2000, stated that appellant's disability is severe enough to warrant medical disability. Therefore, the Agency is directed to have someone in Human Resources contact the appellant to assist with disability retirement efforts.

The appellant is reminded of his requirement to provide documentation for his absence consistent with Section 513.363 of the Employee and Labor Relations Manual, which states in part:

> "Employees who are on sick leave for extended periods are required to submit at appropriate intervals, but no more frequently than once every 30 days,"

Affidavit _A_
Page _40_ of _75_

---

[2] Information received indicates that Mr. Payne denies receiving any of the July medical certification.
[3] Updated medical certification dated November 2, 2000, provided by the appellant with his appeal states that appellant's disability is severe enough to warrant medical disability.

$EX-3-6$

Based on this provision, it is the position of the Agency that for extended absences, medical certification must be provided every 30 days.

The evidence of record is not sufficient to sustain the charge of failure to meet the attendance requirements of your position in the area of attendance due to being Absent Without Leave/Permission (AWOL).

### CONCLUSION

The decision to remove appellant from his position with the Untied States Postal Service was arbitrary and capricious and not within the tolerable limits of reasonableness and for such cause as will promote the efficiency of the service. Therefore, the removal issued to the appellant effective October 7, 2000, is hereby rescinded and should be removed from any/all records. It is noted that appellant was incapacitated during the period October 7, 2000, to the present. Therefore, appellant is not entitled to any backpay.

### APPEAL RIGHTS

You have the right to appeal this decision in writing to the Chief Executive Officer/Postmaster General, c/o EEO Complainant & Appeals Office, United States Postal Service, 475 L'Enfant Plaza, S.W., Room 9431, Washington, DC, 20260-4245, **within fifteen (15) days** from the date of receipt of this letter.

A copy of your appeal and any supporting documentation must also be submitted to the Agency's designated office at: Office of EEO Compliance and Appeals, Capital Metro Operations, P. O. Box 1730, Ashburn, VA 20146-1730.

Naomia A. Bourdon
Manager, Human Resources
Capital Metro Operations

Attachment: Certificate of Service

$EXH - S - 6$

Affidavit A
Page 49 of 75

6

ELM 650 DECISION

IN THE MATTER OF

JAMES E. ZEIGLER

CERTIFICATE OF SERVICE

I hereby certify that the Step 1 Decision was sent via Express
Mail (EK701722896US) this date to:

**APPELANT:**

JAMES E ZEIGLER
14310 BLACKMON DRIVE
ROCKVILLE MD  20853-2142

And the Step 1 Decision was sent by regular mail this date to::

MANAGER LABOR RELATIONS
CAPITAL DISTRICT
900 BRENTWOOD ROAD NE
WASHINGTON DC  20066-7600

November 13, 2000
**DATE**

OFFICE OF EEO COMPLIANCE & APPEALS
US POSTAL SERVICE
CAPITAL METRO OPERATIONS
P O BOX 1730
ASHBURN VA  20146-1730

$\mathcal{E}x$  3-6

Affidavit  A
Page 50 of 75

7

**Diane F. Jayson, Ph.D.**
**Licensed Psychologist**
**14520 Woodcrest Drive**
**Rockville, MD 20853**
**(301) 460-1675**

August 2, 2001

$2x - 1$

US Postal Service Medical Unit
900 Brentwood Rd., NE
Washington, DC 20006

## ACCOMMODATION OF JAMES E. ZEIGLER OWCP CLAIM A25-575259

Dear Sir or Madam:

Mr. James E. Zeigler is a career postal employee who has been totally disabled from work since February 2000. Mr. Zeigler has pending OWCP claim, a pending VA claim, and is a Schedule A employee under the special appointing authority. I am clearing this employee to return to work in a **limited duty status.**

Mr. Zeigler has been attending weekly therapy sessions with me from September 11, 2000 to the present. He has dilligently attended sessions and followed through with treatment. He also receives medication management with Dr. Praymol Varghese. Since starting in treatment, Mr. Zeigler has made much progress and improvement. It is my professional opinion that he is now ready to return to work **with the following restrictions and stipulations:**

- Be assigned to a work location where the stressors did not occur.

- Absolutely no exposure to persons causing the stressors.

- Be allowed to attend weekly therapy sessions.

- 8 AM to 4PM Monday through Friday 40 hours per week.

- **Work in Montgomery County, MD within a close distance to weekly therapy sessions.**

- Be assigned to manage maximum of 4 employees for the first 90 days of returning to work.

- Be assigned a position in an area of expertise of the employee, including Training and Educational Development, Personnel and Human Resources Management, Claims Management, Finance, Marketing, Accounting, Quality Management, Advertising, Employee and Labor Relations, Safety Health Systems, Customer Service and Call Center Management.

Exhibit 6
Page 1 of 1

Sincerely,

Diane F. Jayson, Ph.D.

Diane F. Jayson, Ph.D.

EXHIBIT
E

OFFICE OF THE POSTMASTER
WASHINGTON, DC


**UNITED STATES
POSTAL SERVICE**

August 14, 2001

$Ex-1$

Mr. James E. Zeigler
14310 Blackmon Drive
Rockville, Md. 20853-2142

Dear Mr. Zeigler:

This is in response to correspondence received from Dr. Diane F. Jayson
requesting accommodation for your medical restrictions. In her correspondence,
Dr. Jayson refers to limited duty. However, since your OWCP claim is not yet
adjudicated, this should be considered light duty.

Your request for temporary light duty is denied because your restrictions cannot
be accommodated. You may reapply for temporary light duty when you are
further along in your recovery and can provide new duty restrictions for
consideration.

Attached is a copy of Publication 71 for your use in determining if your absence
is a covered condition under the Family Medical Leave Act.

If your condition is permanent and there is no prognosis of sufficient recovery for
your return to full duty, you may request permanent reassignment, reasonable
accommodation or disability retirement, as appropriate.

Delores J. Killette
Postmaster

cc:    Area Manager
       Employee's File

Exhibit  7
Page  1  of  1

EXHIBIT
F

900 BRENTWOOD ROAD, NE
WASHINGTON, DC 20066-9998
(202) 636-1200

**Diane F. Jayson, Ph.D.**
**Licensed Psychologist**
**14520 Woodcrest Drive**
**Rockville, MD 20853**
**(301) 460-1675**

August 30, 2001



District Manager
Postmaster
900 Brentwood Rd., NE
Washington, DC 20006

## ACCOMMODATION OF JAMES E. ZEIGLER OWCP CLAIM A25-575259

Dear Sir or Madam:

Mr. James E. Zeigler is a career postal employee who has been totally disabled from work since February 2000. Mr. Zeigler has pending OWCP claim, a pending VA claim, and is a Schedule A employee under the special appointing authority. I am clearing this employee to return to work in a **reasonable accommodation status.**

Mr. Zeigler has been attending weekly therapy sessions with me from September 11, 2000 to the present. He has dilligently attended sessions and followed through with treatment. He also receives medication management with Dr. Praymol Varghese. Since starting in treatment, Mr. Zeigler has made much progress and improvement. It is my professional opinion that he is now ready to return to work **with the following restrictions and stipulations:**

- Be assigned to a work location where the stressors did not occur.

- Absolutely no exposure to persons causing the stressors.

- Be allowed to attend weekly therapy sessions.

- 8 AM to 4PM Monday through Friday 40 hours per week.

- Work in Montgomery County, MD within a close distance to weekly therapy sessions.

- Be assigned to manage maximum of 4 employees for the first 90 days of returning to work.

- Be assigned a position in an area of expertise of the employee, including Training and Educational Development, Personnel and Human Resources Management, Claims Management, Finance, Marketing, Accounting, Quality Management, Advertising, Employee and Labor Relations, Safety Health Systems, Customer Service and Call Center Management.

Sincerely,

Diane F. Jayson, Ph.D.

Exhibit __8__
Page __1__ of __1__

EXHIBT
G-1

**Diane F. Jayson, Ph.D.**
**Licensed Psychologist**
**14520 Woodcrest Drive**
**Rockville, MD 20853**
**(301) 460-1675**

September 11, 2001

Medical Unit
United States Postal Service
900 Brentwood Rd., NE
Washington, DC 20006

## ACCOMMODATION OF JAMES E. ZEIGLER OWCP CLAIM A25-575259

Dear Sir or Madam:

Mr. James E. Zeigler is a career postal employee who has been totally disabled from work since February 2000. Mr. Zeigler has pending OWCP claim, a pending VA claim, and is a Schedule A employee under the special appointing authority. I am clearing this employee to return to work in a **reasonable accommodation status.**

Mr. Zeigler has been attending weekly therapy sessions with me from September 11, 2000 to the present. He has diligently attended sessions and followed through with treatment. He also receives medication management with Dr. Praymol Varghese. Since starting in treatment, Mr. Zeigler has made much progress and improvement. It is my professional opinion that he is now ready to return to work **with the following restrictions and stipulations:**

- Be assigned to a work location where the stressors did not occur.

- Absolutely no exposure to persons causing the stressors.

- 8 AM to 4PM Monday through Friday 40 hours per week.

- Work in Montgomery County, MD in order to be able to conveniently attend weekly therapy sessions.

- Be assigned a position in an area of expertise of the employee, including Training and Educational Development, Personnel and Human Resources Management, Claims Management, Finance, Marketing, Accounting, Quality Management, Advertising, Employee and Labor Relations, Safety Health Systems, Customer Service and Call Center Management.

Sincerely,

Diane F. Jayson, Ph.D.

Exhibit 9
Page 1 of 1

EXHIBIT
G-2

CAPITAL PERFORMANCE CLUSTER
HUMAN RESOURCES

 **UNITED STATES**
**POSTAL SERVICE**

August 27, 2001

SUBJECT:   Reasonable Accommodations



TO:    James E. Zeigler
14310 Blackmon Drive
Rockville, MD 20853-2142

The Reasonable Accommodation Committee recently received a request to assist you with reasonable accommodations in a work assignment. Before we can render a decision in your case we will need additional medical information from your treating physician:

1.   Diagnosis of your current condition
2.   Abilities as outlined on attached MEDICAL RESTRICTIONS FORM
3.   Your physician's assessment of the duration of each of the restrictions
4.   Your physician's assessment of how the impairment impacts major life activities, i.e. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working

This medical information is necessary to complete the reasonable accommodation request process. All information will be maintained in accordance with the Privacy Act Systems or Record 120.070. Disclosure of this information will be restricted to those agencies or individuals specifically identified in 120.070. Please forward the information to the Health Unit, 900 Brentwood Road, NE, Washington, DC 20066-7601 within 14 days of receipt of this letter.

Sincerely,

*Christine R Dailey*

Christine R. Dailey
Reasonable Accommodation Committee

Exhibit ___10___
Page ___1___ of ___1___

Attachment


EXHIBIT
H

900 BRENTWOOD ROAD NE
WASHINGTON DC 20066-7600

**Diane F. Jayson, Ph.D.**
**Licensed Psychologist**
**14520 Woodcrest Drive**
**Rockville, MD 20853**
**(301) 460-1675**

September 27, 2001

Ms. Christine R. Dailey
Reasonable Accommodation Committee
Health Unit
United States Postal Service
900 Brentwood Rd., NE
Washington, DC 20006

Dear Ms. Dailey,

This letter is in response to your request for additional medical information on Mr. James E. Zeigler, concerning his request for reasonable accommodations. I have completed the Medical Restrictions Assessment Form, as I am his treating clinician. It should be noted that I am not a physician. However, I know of no physical restrictions for Mr. Zeigler.

Mr. Zeigler is diagnosed with Posttraumatic Stress Disorder. He also has suffered from a secondary diagnosis of Major Depression. However, he has made much progress in therapy and his depression has lifted to the point that there are virtually no current symptoms. Although some symptoms of Posttraumatic Stress Disorder still persist, they should not currently interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors.

Mr. Zeigler's current impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working.

Sincerely,

Diane F. Jayson, Ph.D.
Licensed Psychologist

Exhibit 11
Page 1 of 1

EXHIBIT
I-1

## MEDICAL RESTRICTIONS ASSESSMENT FORM

**UNITED STATES POSTAL SERVICE**

Employee: JAMES E. ZEIGLER  SSN: 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

Job Title: CUST SERV FINANCE SPR  Facility: CAPITAL DIST

**PHYSICIAN:** Please check the frequency and maximum number of hours per day the employee is able to do the following activities. Time limits should be the total allowed for an 8 hour shift. Indicate if the activity should be done **intermittently** or **continuously**.

| ACTIVITY | FREQUENCY | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Intermittent | Continuous | | | | | | | | | |
| | | | | | | | | | | | ✓ |
| | | | | | | | | | | | ✓ |
| Sitting: | ✓ | | | | | | | | | | ✓ |
| Standing: | ✓ | | | | | | | | | | ✓ |
| Walking: | ✓ | | | | | | | | | | ✓ |
| Lifting: | ✓ | | | | | | | | | | ✓ |
| Bending: | ✓ | | | | | | | | | | ✓ |
| Squatting: | ✓ | | | | | | | | | | ✓ |
| Climbing: | ✓ | | | | | | | | | | ✓ |
| Kneeling: | ✓ | | | | | | | | | | ✓ |
| Twisting: | ✓ | | | | | | | | | | ✓ |

**WEIGHT LIFTING ABILITY:**

0 - 10 lbs [ ]    0-25 lbs [ ]    0-50 lbs [ ]    0-75 lbs [✓]

**HAND RESTRICTIONS:**

| LEFT HAND | | RIGHT HAND |
|---|---|---|
| YES: ✓  NO: ___ | Simple grasping permitted? | YES: ✓  NO: ___ |
| YES: ✓  NO: ___ | Pushing & pulling permitted? | YES: ✓  NO: ___ |
| YES: ✓  NO: ___ | Fine manipulation permitted? | YES: ✓  NO: ___ |

Can employee reach above shoulder?  YES: ✓  NO: ___

Can employee use his/her feet to operate foot controls for repetitive motion?  YES: ✓  NO: ___

Can employee operate a car, truck, forklift or tow vehicle?  YES: ✓  NO: ___

Are there cardiac, visual, or hearing restrictions?  YES: ___  NO: ✓

If so, please describe: _____

_____

_____

Exhibit 12
Page 1 of 2

EXHIBIT I-2

EXHIBIT N

- 2 -

Can employee attend general training within medical restrictions, possibly including typing?　　　　　YES: ✓　NO: ____

Can employee work 8 hours per day?　　　　　　　YES: ✓　NO: ____

Can employee work overtime, within medical restrictions?　YES: ____　NO: ✓

If not, how many hours per day can employee work? ___8___

Is this medical condition permanent?　_PTSD_ YES: ✓　NO: ____

If not, when is the anticipated date of maximum recovery? _____

Other restrictions: _No exposure to persons causing stressors._ _Be assigned to a work location where stressors did_ _not occur. Be assigned to work in Montgomery County_ _for at least 1 year. No more than 40 hrs 8am to_ _4pm Mon-Fri for at least 6 months. Work in_ _areas of expertise, as per letter of 9/11/01._

_Diane F. Jayson, Ph.D_　　　　　　_Diane F. Jayson, Ph.D._
**PHYSICIAN'S PRINTED NAME**　　　　　　**SIGNATURE**

_(301) 460-1675_　　　　　　　_9/27/01_
**TELEPHONE NUMBER**　　　　　　**DATE OF SIGNATURE**

ADDRESS:
_14520 Woodcrest Dr._
_Rockville, MD 20853_

Exhibit 12
Page 2 of 2

November 15, 2001

Honorable Connie Morella (R-MD-8th)
US House of Representatives
2228 Rayburn House Office
Washington, DC 20515
Rep.morella@mail.house.gov

Mr. James E. Zeigler
14310 Blackmon Drive
Rockville, Md. 20853-2142
PH 301-871-5572
ZEIGLERJE@AOL.COM

Dear Representative Morella:

   I am a honorably discharged Vietnam Era disabled American veteran who has been totally medically disabled from my workplace (US Postal Service Capital District Washington DC 23 years of career federal service) since February 2000 until August 2001. I have been denied reasonable accomodation by my workplace (US Postal Service) which is a violation of Title I of the Americans Disabilities Act .   The medical conditions which have caused me to be totally disabled by four medical practitioners are military service connected and have been aggravated and accelerated by my present employment. I have used all my sick and annual leave from my job and all my savings so I have little financial support other than SSI ($ 477.00 monthly starting in March 2001). I am on the brink of financial ruin and my workplace **US Postal Service Washington Capital District has denied me reasonable accomodation since August 2001. The US Postal Service has failed to recognize that limited or light duty has no bearing in regards to reasonable accomodation for qualified individuals with disabilities under ADA's basic employment nondiscrimination requirements.**

   I have had a recent approval for service connected disability by **The Department of Veterans Affairs** in November 2001. I have requested disclosure of information on two occasions from the  **Office of Workers' Compensation Programs US Department of Labor** with two difference claims examiners The first request was with Ms. Sharon Collins August 31, 2001 and the second request was with Ms. Jocelin Thomas October 22, 2001. There has been no response from **OWCP in reference to my two FOIA requests** In the mean time, **OWCP** rendered a decision November 8, 2001 denying my claim for not having sufficient evidence to establish a condition has been diagnosed in connection with the claimed accident, event, or employment factor when in fact my doctor submitted evidence May 7 2001 to the first claims examiner Ms. Darlene Griffin. Also, I filed the original claims (CA-2s) with my employing agency the US Postal Service MAR 2000, MAY 2000, and JULY 2000. I filed three seperate claims and they were all treated as one claim a year later. **The problem is that my employing agency the US Postal Service took over one year to submit the claims to OWCP ( March 28, 2001) . After OWCP recieved information the information was not released to me under the Federal Freedom of Information Act, 5 U.S.C. 5 552. I have no idea what is in my OWCP casefile and if all the information I sent to both the US Postal Service and OWCP was recieved.** I fear my claims evidence has been lost in a mountain of red tape and bureaucracy. The greatest fear that I have is by the time these agencies adjudicate my claims I will have joined the ranks of so many other destitute, homeless, and disabled Vietnam Era Veterans.

   Representative Morella, the reason I am contacting you is because I am one of your constituents living in Montgomery County (Rockville) for over 16 years. I have voted for you because you have been morally, socially and politically active in championing of the rights of disabled Americans and you have not forgotten the Veteran who has served his country during War. We met on two different occasions. The first was while I was the Legislative Representative for Local 592 NAPS Suburban PDC for U.S. Postal Service. You were a speaker for our Legislative Training Seminar in Crystal City. (I believe that during that time you where on the Post Office - Civil Services, Science, Space and Technology Committees.)The

EXHIBIT

J

Affidavit *A*
Page 27 of 75

next time we conversed was at my graduation for the University of Maryland University College where you were the Commencement Speaker May 1996. On both occasions you told me that if I needed any help to contact your office and that you would be more than willing to assist me.

Well, I need your help. Hopefully, after speaking to Mr. Bill Diiorio these trying matters will be addressed and rectified. I have FAXED to your office **1. MY FOURTH REQUEST FOR REASONABLE ACCOMODATION TO THE US POSTAL SERVICE 2. MY TWO REQUEST TO OWCP FOR FOIA DISCLOSURES 3. MEDICAL DOCUMENTATION SUBMITTED MAY 2001 TO OWCP 4. NOTICE OF DECISION FROM OWCP**

Sincerely Yours,

James E. Zeigler

Affidavit _A_
Page _2B_ of _75_

| **Rating Decision** | *Department of Veterans Affairs*<br>*Baltimore Regional Office* | | Page 1<br>02/19/2002 |
|---|---|---|---|
| NAME OF VETERAN<br>JAMES E. ZEIGLER | VA FILE NUMBER<br>227 84 0536 | SOCIAL SECURITY NR<br>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 | POA<br>Disabled American Veterans |

## ISSUE:

Entitlement to individual unemployability.

## EVIDENCE:

Evidence of Record

## DECISION:

Entitlement to individual unemployability is granted effective December 10, 2001.

## REASONS AND BASES:

Entitlement to individual unemployability is granted because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.

The veteran was found to be service connected for post traumatic stress disorder on the rating decision dated October 30, 2001 and was informed of the decision on November 6, 2001. He filed for an increase compensation based on unemployability on December 10, 2001. At that time, a development letter was sent to his former employer asking for the reasons the employee left his last position and for the employer to complete and return a VA Form 21-4192 "Request of Employment Information in Connection with Claim for Disability Benefits. This letter was sent on December 14, 2001. As of this date no response has been received by this office.

An evaluation of 70 percent is assigned for occupation and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation, obsession rituals which interfere with routine activities; speech intermittently illogical, obscure , or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work and worklike settings), inability to establish and maintain effective relationships.

Several documents in the file show that the veteran has post traumatic stress and is unable to work because of it. Because of his medical history, his psychological condition as documented in the claims folder and his 70 percent evaluation, the veteran is granted entitlement to individual unemployability.

Except as otherwise provided, the effective date will be the date of receipt of the claim or the date entitlement arose whichever is the later. (Authority: 38 USC 5110(a)).

Affidavit____ A
Page 67 of 75



EXHIBIT
K

| Rating Decision | Department of Veterans Affairs<br>Baltimore Regional Office | | Page 2<br>02/19/2002 |
| --- | --- | --- | --- |
| NAME OF VETERAN<br>JAMES E. ZEIGLER | VA FILE NUMBER<br>227 84 0536 | SOCIAL SECURITY NR<br>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 | POA<br>Disabled American Veterans |

**REFERENCES:**

Title 38 of the Code of Federal Regulations, Pension, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our web site, *www.va.gov.*

Affidavit  A
Page 68 of 75

**UNITED STATES POSTAL SERVICE**
*Reasonable Accommodation Committee*

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED - 70993400001136791237**

DATE:          March 15, 2002

FILE ID:       James E. Zielgler

SUBJECT:       Denial of Accommodation

TO:            James E. Ziegler
               14310 Blackmon Drive
               Rockville MD. 20853-2142

Recently the Reasonable Accommodation Committee met with you regarding your requested work place accommodation. The committee reviewed this request and determined that reasonable accommodation is not required. The committee's decision is based on the fact that available medical records failed to establish that you are disabled in accordance with the Rehabilitation Act.

Since no accommodation is required, the committee is closing your file and referring you back to Delores Killette, Postmaster. We would like to thank you for your participation in this process.

Sincerely,

*Charly B. Lancaster*

Charlynn B. Lancaster
Coordinator
Reasonable Accommodation Committee

Cc: Delores Killette, Postmaster

**NOTICE OF TIME LIMIT TO PURSUE EEO COMPLAINT PROCESS**

If your request for reasonable accommodation has been denied and you are dissatisfied with the decision, you have certain rights. You have the right to pursue the EEO complaint process regarding the denial of your request for accommodation. You must commence the EEO complaint process within 45 days of the date of the denial, even if you are also participating in any informal dispute resolution process. Failure to timely pursue the EEO complaint process could result in the dismissal of your complaint.

Exhibit 13
Page 1 of 1

EXHIBIT
L

EEO COMPLAINTS INVESTIGATOR
CAPITAL METRO OPERATIONS



**UNITED STATES**
**POSTAL SERVICE**

June 4, 2003

## RE: EEO Investigation / Affidavit
## Complainant: James E. Zeigler        Case No.: 4K-200-0166-02

*Specific Issue(s):*    *Discrimination due to retaliation and mental disability (PTSD/Major Depression) when on march 26, 2002 he received a denial of his request for Reasonable Accommodations.*

Christine Dailey
Manager, Reasonable
Accommodations Committee
900 Brentwood Road
Washington, DC 20066-9998

In accordance with applicable Equal Employment Opportunity Commission regulations, all allegations of discrimination require a fact-finding investigation. I have been assigned to conduct the EEO investigation relating to the Complainant's case identified above. Affidavits and/or documentary evidence are necessary while conducting this investigation.

Enclosed is an affidavit questionnaire for your completion. To complete the affidavit please follow these instructions and be as specific as possible:

-----*On PS Form 2568-B, EEO Investigative Affidavit* (Witness) *provide all the information at the top, answer the questions, date and sign the bottom of page one.*

-----If needed, use PS Form 2569, EEO Investigative Affidavit *(Continuation Sheet)* to answer remaining questions, number each page, sign and date the bottom of each page.

-----Sign and date PS Form 2571, Certification, after you have answered all the questions on the affidavit.

Note: You have the right to have a representative present at anytime you are asked for testimony at the investigative and/or hearing stage. Therefore, if you so desire, have your representative review your completed affidavit prior to submitting it to this office.

**Return the completed affidavit to me by COB, June 16, 2003. Also, you are directed not to discuss any aspect of the case with the complainant. Any and all inquires pertaining to the case should be directed to me.**

Sincerely,

Donald Lanier
EEO Investigator
Capital Metro Operations
405 Chesterfield Road
Hampton, VA 23661-9998
(757) 244-3427

Affidavit $B$
Page 1 of 6



EXHIBIT
M

| U.S. Postal Service | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit** *(Witness)* | **1** | | 4K-200-0166-02 |

| 1. Affiant's Name *(First, Middle, Last)* <br> **Christine Dailey** | 2. Employing Postal Facility <br> **Washington P&DC** | | |
|---|---|---|---|

| 3. Position Title <br> **Manager, Reasonable Accommodations Committee** | 4. Grade Level | 5. Postal Address and ZIP + 4 <br> **900 Brentwood Road** <br> **Washington, DC 20066-9998** | 6. Unit Assigned |
|---|---|---|---|

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement *(Use Form 2569 if additional space is required)*

**YOU HAVE THE RIGHT TO REPRESENTATION DURING THE COMPLETION OF THIS AFFIDAVIT.**

Q1.  Please state your full name and position.
A1.

Q2.  On March 25, 2002, were you James Zeigler's immediate supervisor and / or manager?
A2.

Q3.  On March 25, 2002, were you aware that the Complainant, James Zeigler, had a mental disability that substantially impaired his/her ability to perform a major life activity such as, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and/or working? If yes, please explain what disability of the Complainant's you were aware of, when you became aware of it, and how you became aware of it.

A3.

Q4.  Did the Complainant provide you with medical documentation to substantiate his mental disability? If yes, when was the medical documentation presented to you and state what specific activities were cited as being impaired by the disability?

A4.

Q5.  Based on the medical documentation presented to you by the Complainant relating to his/her disability, did you believe the Complainant could perform the essential functions of his/her job without some type of accommodations? If not, what job tasks of the Complainant's position did you interpret that he/she could not perform without some type of accommodation or assistance?

A5.

Q6.  On March 25, 2002, did the Complainant, James Zeigler, make a request to have his job accommodated for his mental disability?
A6.

Affidavit *B*
Page *7* of *8*

Q7.  If yes to question 6, did you deny or approve the Complainant's request for accommodations? If the request was denied, please explain in detail why you denied the request.

**A7.**

**Q6.** What undue hardship to the agency would accommodating the Complainant's disability request cause?
**A6.**

**Q7.** Would the Complainant's request be in violation of any regulation or bargaining contract agreement?
**A7.**

**Q8.** What documentation or evidence exists to support your decision to deny the Complainant's accommodation request? *(Please provide the investigator with a copy of any cited documentation or evidence).*

**A8.**

**Q9.** What regulations or contract provisions did you rely upon in denying the Complainant's accommodation request?

**A9.**

**Q10.** Did you considered any other possible accommodations other than that presented by the Complainant? If yes, what were the alternatives considered?

**A10.**

**Q11.** Is there anything else you can add that will assist in the processing of this complaint?
**A11.**

**Q12.**
**A12.**

**Q13.**
**A13.**

| I declare under penalty of perjury that the foregoing is true and correct. | |
| --- | --- |
| Affiant's Signature | Date Signed |
| | Affidavit _B_<br>Page _3_ of _8_ |

PS Form **2568-B**, March 2001

Mr. Zeigler failed to establish that he was disabled in accordance with the Rehabilitation Act as stated in the EL-307.

Did you consider any other possible accommodations other than that presented by the Complainant?  If yes, what were the alternatives considered?

No, accommodation was not necessary..

*Christine R Dailey*
6/23/03

Affidavit B
Page 9 of 9

| U.S. Postal Service | Case No. |
|---|---|
| **Certification** | 4K-200-0166-02 |

I have read the foregoing attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief.  In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended.  This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program.  As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for Investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act.  Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**USPS Standards of Conduct**

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action (ELM 666).

**Oath / Affirmation**

Subscribed and (sworn) (affirmed) before me on this _____day of _____ **2003**.

*(Affiant, sign in the presence of an EEO Complainants Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant |
|---|---|
| | |

**Declaration**

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed | |
|---|---|---|
| *Christine R Dailey* | 6/23/03 | **Affidavit** B **Page** 5 of 8 |

PS Form **2571**, March 2001

Please state your retaliation and mental disability.

There was no retaliation and I have no mental disability

On March 25, 2002, were you James Zeigler's immediate supervisor?

No

On March 25, 2002, were you aware that the Complainant, James Zeigler, had a physical/mental disability that substantially impaired his/her ability to perform a major life activity such as, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and/or working? If yes, please explain what disability of the Complainant's you were aware of, when you became aware of it, and how you became aware of it.

No, in fact on March 15, 2002, a letter was sent to Mr. Zeigler stating that medical records failed to establish he was disabled in accordance with the Rehabilitation Act. (copy attached)

Did the Complainant provide you with medical documentation to substantiate his/her physical/mental disability? If yes, when was the medical documentation presented to you and state what specific activities were cited as being impaired by the disability?

No, the only letter received was from Diane F. Jayson, Ph.D, licensed psychologist dated September 27, 2001, which stated his impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working. (copy attached)

Based on the medical documentation presented to you by the Complainant relating to his/her disability, did you believe the Complainant could perform the essential functions of his/her job without some type of accommodations? If no, what job task of the Complainant's position did you interpret that he/she could not perform without some type of accommodation or assistance?

Yes

On March 25, 2002, did the Complainant, James Zeigler, make a request to have his/her job accommodated for his/her physical/mental disability by INSERT REQUESTED ACCOMMODATION?

There is nothing on file with a March 25, 2002 date

What undue hardship to the agency would accommodating the Complainant's disability request cause?

Based on information received, the complainant had no disability therefore accommodations was not necessary.

Would the Complainant's request be in violation of any regulation or bargaining contract agreement?

Complainant was a non-bargaining employee

What documentation or evidence exists to support your decision to deny the Complainant's accommodation request?

The letter provided by his psychologist

What regulations or contract provisions did you rely upon in denying the Complainant's accommodation request?

Affidavit B
Page 2 of 8

Christine R Dailey
6/23/03

U. S. Postal Service

# EEO Investigative Affidavit *(Witness)*

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 1 | | 4K-200-0166-02 |

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| Christine R. Dailey | Capital District |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP+4 | 6. Unit Assigned |
|---|---|---|---|
| Manager, Personnel Services | EAS-21 | 900 Brentwood Road, NE<br>Washington, DC 20066-7601 | Human Resources |

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine Use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the national labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement *(Use Form 2569 if additional space is required)*

1. Are you aware of the complainant's prior EEO activity? If yes, how did you become aware of it?

No, I have no knowledge of complainant's EEO activities.

2. Please provide a list of all employees who requested an accommodation in 2001 and 2002.

I have no record of employees requesting accommodations in 2001 due to closure of Curseen/Morris in October 2001. All DRAC files were destroyed as a result of Anthrax.

Accommodations for 2002 reviewed were Cecelia Jones; Symuell Coates; Terrance Braxton; Harold Hurt; Jerome Morgan; Sandra Curry; James A. Crawford; Dean Dalton; Sonsheeray Turner; Tammy Douglas; Edith Aultmon; Roosevelt Mitchell; Thelma Bolton; Sylvia Chapman; Sheila Shelton.

Affidavit B
Page 7 of 8

| | |
|---|---|
| U.S. Postal Service<br>**Certification** | Case No.<br>4K-200-0166-02 |

I have read the proceeding attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this ___**5th**___ day of _____**October**_____, 20**04**___.

| | |
|---|---|
| _____<br>Signature of EEO Complaints Investigator | Affiant's Signature (Sign in the presence of EEO Investigator)<br>_____<br>Signature of Affiant |

## Declaration

**I declare, under penalty of perjury, that the foregoing is true and correct.**

Affidavit _B_
Page _8_ of _8_

*(Affiant, sign and date if attached statement was not completed in the presence of the EEO Investigator.)*

| Affiant's Signature | Date Signed |
|---|---|
| Christine R Dailey | 10/5/04 |

PS Form **2571**, May 2001

| U.S. Postal Service | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **EEO Investigative Affidavit** *(Witness)* | | 1 | 3 | 4K-200-0166-02 |

| 1. Affiant's Name *(First, Middle, Last)* | | 2. Employing Postal Facility |
|---|---|---|
| ~~Dolores Kinette~~ xx Charlynn B. Lancaster | | **Washington P&DC** |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP + 4 | 6. Unit Assigned |
|---|---|---|---|
| ~~Postmaster~~ xx Professional Specialist Trainee | EAS-17 | 900 Brentwood Road Washington, DC 20066-9998 | HR |

### Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation.
Failure to supply the requested information could result in disciplinary action. (ELM 666)

7. Statement *(Use Form 2569 if additional space is required)*

**YOU HAVE THE RIGHT TO REPRESENTATION DURING THE COMPLETION OF THIS AFFIDAVIT.**

Q1.  Please state your Retaliation and Mental disability.
A1.  I did not retaliate against Mr. Zieglar nor do I have a Mental disability.

Q2.  On March 25, 2002, were you James Zeigler's immediate supervisor?
A2.  No.

Q3.  On March 25, 2002, were you aware that the Complainant, James Zeigler, had a physical/mental disability that substantially impaired his/her ability to perform a major life activity such as, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and/or working? If yes, please explain what disability of the Complainant's you were aware of, when you became aware of it, and how you became aware of it.
A3.  No

Q4.  Did the Complainant provide you with medical documentation to substantiate his/her physical/mental disability? If yes, when was the medical documentation presented to you and state what specific activities were cited as being impaired by the disability?
A4.  Medical documentation was submitted by Dr. Diane F. Jayson, PH.D, Licensed Psychologist. The documentation state that Mr. Ziegler's impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, seeing, *con't*

Q5.  Based on the medical documentation presented to you by the Complainant relating to his/her disability, did you believe the Complainant could perform the essential functions of his/her job without some type of accommodations? If not, what job tasks of the Complainant's position did you interpret that he/she could not perform without some type of accommodation or assistance?
A5.  yes

Affidavit C
Page 1 of 4

Q6.  On March 25, 2002, did the Complainant, James Zeigler, make a request to have his/her job accommodated for his/her physical/ mental disability by INSERT REQUESTED ACCOMMODATION?
A6.  The complainant made a request for reasonable accommodations prior to March 25, 2002.

Q7.  If yes to question 6, did you ~~deny~~ or ~~~~ plainant's request for accommodations? If the request was denied, please explain i___ ___ he request.

EXHIBIT
N

*Charlyn B Lancaster*
6/23/03

**A7.** Complainant was denied reasonable accommodations in that his medical records failed to establish that he was disabled in accordance with the rehabilitaion act.

**Q6.** What undue hardship to the agency would accommodating the Complainant's disability request cause?
**A6.** In that available documentation did not substantiate a disability, no accommodations were necessary.

**Q7.** Would the Complainant's request be in violation of any regulation or bargaining contract agreement?
**A7.** Complainant was a non-bargaining employee.

**Q8.** What documentation or evidence exists to support your decision to deny the Complainant's accommodation request? *(Please provide the investigator with a copy of any cited documentation or evidence).*
**A8.** Documentation submitted by his Psychologist.

**Q9.** What regulations or contract provisions did you rely upon in denying the Complainant's accommodation request?
**A9.** The rehabilitaion act in accordance with the EL-307.

**Q10.** Did you considered any other possible accommodations other than that presented by the Complainant? If yes, what were the alternatives considered?
**A10.** No.

**Q11.**
**A11.**

**Q12.**
**A12.**

**Q13.**
**A13.**

**Q14.**
**A14.**

**Q15.**
**A15.**

**Q16.**
**A16.**

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature *Charly B Lancaster* | Date Signed *June 23, 2003* |

PS Form **2568-B**, March 2001

Affidavit C
Page 7 of 4

**UNITED STATES**
**POSTAL SERVICE**
**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| | 3 | 4K-200-0166-02 |

A4 continued:

hearing, speaking, breathing, learning or working.

NOTHING FOLLOWS.

**I declare under penalty of perjury that the foregoing is true and correct.**

Affidavit
Page 3 of 4

Affiant's Signature

*Charly B Lancaster*

Date Signed
6/23/03

PS Form **2569**, March 2001

| U.S. Postal Service | Case No. |
|---|---|
| **Certification** | 4K-200-0166-02 |

I have read the foregoing attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for Investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

### Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____ **2003**.

| | *(Affiant, sign in the presence of an EEO Complainants Investigator.)* |
|---|---|
| Signature of EEO Complaints Investigator | Signature of Affiant |

### Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

Affidavit C
Page 4 of 4

*(Affiant, sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
|---|---|
| *Charle B. Pareosto* | 6/53/03 |

PS Form **2571**, March 2001

CAPITAL DISTRICT
HUMAN RESOURCES
EEO OFFICE


**UNITED STATES**
**POSTAL SERVICE**

August 19, 2002                     Certified: 70011140000019226387

JAMES ZEIGLER
14310 BLACKMON DRIVE
ROCKVILLE MD 20853-2142

Mr. Zeigler:

This letter is in reference to your request for EEO counseling of 4-2-02, Case No. 4-K-200-0166-02. You allege that you were discriminated against based on a physical disability (not identified) and retaliation for your prior EEO activity when on Marcy 25,2002, you were not given reasonable accommodation for your physical disability; you were not given a response to your request for reasonable accommodation; and you were denied pay dating back to December 14, 2001.

Your case has been assigned to me for processing at this level, and I am prepared to proceed. I have called your telephone number of record in an effort to meet with you; I left messages on your answering machine. I have not received any response from you.

Will you please contact me at 301-927-1372 so that I can discuss your claims with you? If I am away from my office, leave a telephone number where I may contact you.

*Willie C. Boyd*

Willie C. Boyd
EEO Dispute Resolution Specialist
Capital District

Counselor's Report
Page 4 of 32


EXHIBIT
O

FAX

**UNITED STATES POSTAL SERVICE®**    **EEO Complaint of Discrimination in the Postal Service**

(See Instructions and Privacy Act Statement on Reverse)

| 1. Name JAMES E. ZEIGLER | 2. SSN 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 | 3. Case No. 4-K-200-0166-02 |
|---|---|---|

| 4a. Mailing Address – Street or PO Box 14310 BLACKMON DRIVE | 4b. City State & Zip +4 ROCKVILLE, MD. 20853-2142 |
|---|---|

| 5. Email Address* ZEIGLERJSE@AOL.COM | 6. Home Phone (301) 871-5572 ( ) | 7. Work Phone N/A |
|---|---|---|

| 8. Position Title (USPS Employees Only) #ST SERV FINANCE SPR | 9. Grade Level (USPS Employees Only) EAS-16 | 10. Do you have Veteran's Preference Eligibility? ☒ Yes ☐ No |
|---|---|---|

11. Installation Where You Believe the Discrimination Occurred (Identify Installation, City, State, and Zip+4)
WASHINGTON DC BRENTWOOD POST OFF
900 BRENTWOOD RD NE
WASHINGTON DC 20066-9998

12. Name and Title of Person(s) Who Took the Action(s) You Allege was Discriminatory
1 DELORES KILLETTE POSTMASTER
2 CHRISTINE DAILEY MANAGER
3 CHARLYNN LANCASTER MANAGE

| 13a. Name of Your Designated Representative TO BE CHOSEN AT | 13b. Title LATER DATE (92) |
|---|---|

| 13c. Mailing Address (Street or P.O. Box) | 13d. City, State and Zip +4 |
|---|---|

| 13e. Email Address* | 13f. Home Phone ( ) | 13g. Work Phone ( ) |
|---|---|---|

14. Type of Discrimination You Are Alleging
☐ Race (Specify):
☐ Color (Specify):
☐ Religion (Specify):
☐ National Origin (Specify):
☐ Sex (Specify):
☐ Age (40+) (Specify):
☒ Retaliation (Specify):
☒ Disability (Specify):

15. Date on which alleged act(s) of Discrimination Took Place

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R § 1614.106(d)

1) DENIED REASONABLE ACCOMMODATION WITHOUT JUST CAUSE AND CLEAR EXPLANATION. FALSE STATEMENT SUBMITTED BY MANAGEMENT OFFICIAL

2) PAYMENT FROM RESERVE ACCOUNT BALANCE NOT PAID AS SCHEDULED SINCE DECEMBER 14 2001. ACTION VIEWED AS DISCRIMINATION AND RETALIATION

3) DISCRIMINATED AND RETALIATED AGAINST FOR FILING MEDICAL DOCUMENTS, OWCP CLAIMS PRE EEO CONSULTATION AND ELM USO APPEAL SETTLEMENT FOR REMOVAL

17. What Remedy Are You Seeking to Resolve this Complaint?
(1) BACK PAY + FRONT PAY
(2) COMPENSATORY DAMAGES
(3) PUNITIVE DAMAGES
(4) INJUNCTIVE RELIEF

EEO COMPLIANCE AND APPEALS
U.S. POSTAL SERVICE

SEP ? ?

?? ? ? CENTER

18. Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS™ mediator?
☐ Yes _____ ☒ No
(Date You Received the Notice of Final Interview)

Formal Complaint
Page 7 of 9

| 19a. Signature of Dispute Resolution Specialist Willie C Boyd | 19b. Date 9-6-02 |
|---|---|

| 20. Signature of Complainant or Complainant's Attorney James _____ | 21. Date of this Complaint 9-20-02 |
|---|---|

*Providing this information will authorize the U.S. Postal Service to send you important documents electronically.

EXHIBIT
P

U.S. Postal Service

# Notice of Right to File Individual Complaint

| Counselee Name (Last, First, MI) | Informal Case No. |
|---|---|
| ZEIGLER, JAMES | 4-K-200-0166-02 |

This notice will attest to the fact that on ___September 6, 2002___ I advised you of the actions taken concerning the allegation(s) of discrimination which you brought to my attention. If the matters which you raised during the precomplaint processing stage have not been resolved, you have the right to file a formal complaint within 15 calendar days of the date this notice is received. PS Form 2565, EEO Complaint of Discrimination in the Postal Service, is being provided to you for this purpose. The complaint must be in writing, signed by you and delivered to:

> OFFICE OF EEO COMPLIANCE & APPEALS
> CAPITAL METRO OPERATIONS
> P.O. BOX 1730
> ASHBURN VA  20146-1730

The complaint will be deemed timely filed if it is delivered in person or postmarked before the expiration of the 15 calendar day filing period, or, in the absence of a legible postmark, if it is received by mail within 5 calendar days of the expiration of the 15-day filing period.

An EEO discrimination complaint can be processed only if the complainant alleges he or she has been discriminated against on the basis of race, color, religion, sex, national origin, age, disability or retaliation for past EEO activity. In addition, courts have ruled the complainant has the burden of presenting evidence which would give rise to an inference of discrimination. A complaint must contain the following information:

(1) Your name, address, position, and level;

-- If you change your address, you have a regulatory requirement to immediately report the change to the EEO Compliance and Appeals Coordinator located in your area. (Employees at Postal Service Headquarters and Headquarters Field Units, and employees of the Inspection Service should notify the EEO Appeals Review Specialist at Postal Service Headquarters.)

(2) The specific action or matter complained of, the date of occurrence, and the names of the official(s) who took the action alleged to be discriminatory;

-- You cannot add matters which were not discussed during counseling.

(3) The specific type of discrimination alleged, e.g., race - black, sex - female, etc.;

-- If you allege disability discrimination, the alleged disability must be more than a temporary condition.

-- If you allege age discrimination, you must have been at least 40 years of age on the date the alleged discriminatory action occurred.

(4) A brief statement of the facts which led you to believe you were discriminated against, and the names of similarly situated individuals whom you believe were treated differently than you.

-- If you allege a failure to accommodate a disability or your religion, you must explain the accommodation sought and why you sought it.

-- If you allege retaliation you must show a connection between the action about which you are complaining and your past EEO activity, and you must show that management was aware that you had engaged in protected activity when the alleged discriminatory action occurred.

(5) The name of the EEO Counselor and the date the Notice of Right to File was received.

---

## Privacy Act Notice / USPS Standards of Conduct

Privacy Act Notice. The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; 29 U.S.C., sections 621 et seq. and 701 et. seq.; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants di other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center

for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses

USPS Standards of Conduct. Postal Service re cooperate in any postal investigation. Failure to su disciplinary action (ELM 666).

Formal Complaint
Page  8  of  9

| Signature of Counselee | Date | Signature of Counselor | Date |
|---|---|---|---|
|  |  | Willie C. Boyd | 9-6-02 |

Counselor, if Notice of Right to File is provided to Counselee by mail, it must be sent certified, return receipt requested. Attach signed PS Form 3811, Domestic Return Receipt, to this notice to evidence date of Counselee's receipt.

TransFORM PS Form 2579-A, December 1995

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF

|  |  |
|---|---|
| James E. Zeigler,<br>    Complainant,<br><br>         v.<br><br>John E. Potter,<br>Postmaster General,<br>U. S. Postal Service,<br>Capital Metro Operations,<br>    Agency. | Date:      May 2, 2006<br><br>Agency Case No. 4K-200-0166-02<br><br>EEOC No.      100-2005-00209X |

### NOTICE OF FINAL ACTION

This will be the Agency's **Notice of Final Action,** in accordance
with 29 C.F.R., Part 1614.110(a) on the above-cited discrimination
complaint filed on September 21, 2002.  The complainant alleged
discrimination based on mental disability (PTSD/Major Depression)
and retaliation (Prior EEO activity), when on March 25, 2002, his
request for a reasonable accommodation was denied.

On April 26, 2006, EEOC Administrative Judge Richard W. Furcolo
issued a summary judgment decision finding no discrimination by
the Agency against the Complainant.  This decision was postmarked
on April 25, 2006, and received by the Postal Service on April 28,
2006.

I have reviewed the entire record and I have decided to implement
the decision of the Administrative Judge.

### COMPLAINANT'S APPEAL RIGHTS

#### Right to file a civil action

If you are dissatisfied with this final agency decision, you may
file a civil action in an appropriate U.S. District Court **within
90 calendar days** of your receipt of this decision.  If you choose
to file a civil action, that action should be captioned James E.
Zeigler vs John E. Potter, Postmaster General, U.S. Postal
Service. You may also request the court to appoint an attorney for

EXHIBIT
Q

you and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just. Your application must be filed within the same 90-day time period for filing the civil action.

## *Appeal to the Equal Employment Opportunity Commission*

In lieu of filing a civil action, you may appeal to the Equal Employment Opportunity Commission **within 30 calendar days** of the date of your receipt of this decision, or, if you are represented by an attorney, **within 30 calendar days** of your attorney's receipt of the decision. The appeal must be in writing and filed with the Director, Office of Federal Operations, Equal Employment Opportunity Commission, PO Box 19848, Washington, DC 20036-9848, or by personal delivery to 1801 L Street NW 5th Floor, Washington, DC 20507, or facsimile to (202) 663-7022. The complainant should use PS Form 3573, Notice of Appeal/Petition, (attached to the agency's decision) and should indicate what he or she is appealing. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. A copy of the appeal and any supporting documentation must also be submitted to the agency's designated office: Office of EEO Compliance and Appeals, U. S. Postal Service, Capital Metro Operations, P. O. Box 1730, Ashburn, VA 20146-1730. In or attached to the appeal to the EEOC, you must certify the date and method by which service of the appeal was made on the agency's office.

Failure to file within the 30-day period could result in the EEOC's dismissal of the appeal unless you explain, in writing, extenuating circumstances which prevented filing within the prescribed time limit. In this event, extending the time limit and accepting the appeal will be discretionary with the EEOC.

If you file an appeal with the EEOC's Office of Federal Operations, you may thereafter file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of the Office of Federal Operations' decision. A civil action may also be filed after 180 calendar days of your appeal to

the EEOC, if you have not received a final decision on your appeal.

Kathleen M. Eley
Manager, EEO Compliance & Appeals
Capital Metro Area

Attachments:
1.  Certificate of Service
2.  PS Form 3573, "Notice of Appeal/Petition" (Complainant and Complainant's representative, if an attorney)

- 3 -

*UNITED STATES POSTAL SERVICE*
*EQUAL EMPLOYMENT OPPORTUNITY CASE*
*IN THE MATTER OF*

*James E. Zeigler, Complainant*
*Agency Case No. 4K-200-0166-02*
*EEOC No. 100-2005-00209X*

## CERTIFICATE OF SERVICE

For timeliness purposes, it is presumed that the Notice of Final Action was received by the following individuals within five (5) calendar days after it was mailed on the date indicated below.

**COMPLAINANT:**
JAMES E ZEIGLER
14310 BLACKMON DRIVE
ROCKVILLE MD  20853-2142

**COMPLAINANT'S REPRESENTATIVE:**
DEBORAH KOH ESQ
3 LEONARD COURT
ROCKVILLE MD  20850-2748

**AGENCY'S REPRESENTATIVE:**
TANISHA M EDMONDS
CAPITAL METRO LAW OFFICE
U S POSTAL SERVICE
400 VIRGINIA AVE SW, STE 650
WASHINGTON DC  20024-2730

**ADMINISTRATIVE JUDGE:**
RICHARD W FURCOLO
WASHINGTON FIELD OFFICE
EEO COMMISSION
1801 L STREET, STE 100
WASHINGTON DC  20507-0001

**MANAGER HUMAN RESOURCES**
CAPITAL DISTRICT
U S POSTAL SERVICE
900 BRENTWOOD ROAD
WASHINGTON DC  20066-9994

*May 2, 2006*
Date

*Mary Ann Swit*
EEO FIELD OPERATIONS
CAPITAL METRO
US POSTAL SERVICE
PO BOX 1730
ASHBURN VA  20146-1730

but does not include activities such as swimming, shopping, or enduring physical stress.

It is important to note that where individuals claim that they are limited only in the major life activity of working, they must show that they are significantly restricted in their ability to perform either a class of jobs, or a broad range of jobs in various classes, as compared to the average person having comparable training, skills, and abilities.

### 1-4.1.3  Defining *Substantially Limits* Criteria

An impairment *substantially limits* a major life activity if that impairment renders the individual either unable to perform a major life activity or significantly restricts his or her performance of that activity as compared to the average person's performance of the activity.

Not all medical conditions are substantially limiting. A person with broken bones or a sprained ankle does not have a permanent long-term impairment because the condition will heal within a reasonable time. Similarly, a woman who has a normal pregnancy (and related conditions) does not have a permanent medical condition and therefore does not meet the definition of a person with a disability. In addition, if an individual employs measures to mitigate his or her impairment (e.g., medication, eyeglasses) the effect of those measures should be considered in determining whether an impairment is substantially limiting as to that individual.

Some permanent impairments are not substantially limiting. A back condition that places lifting restrictions of 30 or more pounds has been deemed not to be a substantially limiting condition. Other examples of permanent impairments that do not constitute a condition that substantially limits a major life activity are:

■ Employees who complain that they cannot get along with their supervisors.

■ Simple obesity.

■ Allergies to a particular substance used only in a particular job or type of job.

### 1-4.2  Determining Who Is a Person With a Record of a Disability

A person with a record of a disability is someone who does not now, but sometime in the past, had a medical condition that at that time substantially limited a major life activity. Examples of persons with a record of a disability may include:

■ Someone who suffered from cancer but whose cancer is in remission.

■ A person who had repeated hospitalizations and numerous periods of leave for a long term or permanent ailment.


EXHIBIT
R-1

2-2.2 ## Step Two: Identify the Abilities and Limitations of the Individual

The next step in the accommodation process continues the interactive process to determine the physical and mental abilities of the employee or job applicant. Of course, the individual is usually best able to tell you what he or she can and cannot do. Therefore, discuss the job with the individual.

2-2.2.1 ### Gaining the Individual's Participation

The following are examples of questions that may be modified, as appropriate, and used to gain the individual's participation in the reasonable accommodation process:

- At the present time, these duties are performed in this manner. Can you tell or show us how you can achieve the same results?

- This equipment is used on a regular basis in this manner. Can you show us how you would use it to complete the task?

- Historically, this job has been done using this sequence and method. Do you feel you could accomplish the same results in this or in another way?

- This is the normal arrangement of the work area. Do you have any suggestions regarding changes or modifications that may be necessary to permit you to perform the job?

2-2.2.2 ### Job Applicants

After (and only after) making a bona fide job offer to an applicant should a medical assessment be scheduled to assist you in defining an applicant's abilities and limitations. The applicant's physician or Postal Service medical personnel may not necessarily know the functions of a particular job. Accordingly, you should verify that the risk assessment is based on a complete understanding of the functions of the job. You should also discuss with both medical personnel and the applicant whether any accommodations can be made. Other important sources of information that will assist you in defining the individual's abilities and limitations include past medical records, current medical exams, and past work history.

Do not make medical inquiries or schedule medical assessments before making a bona fide job offer!

2-2.2.3 ### Employees

For employees requesting reasonable accommodation, consider medical information that their physicians may provide to determine job-related limitations and how they could be overcome. Other important sources of information that will assist you in defining the employee's abilities and limitations include past medical records, current medical examinations, and past work history. It may be necessary to schedule a medical evaluation to obtain a better understanding of the employee's abilities and limitations.





EXHIBIT
R-2