UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES E. ZEIGLER, | ) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 06-1385 (RMC) |
| JOHN E. POTTER,<br>POSTMASTER GENERAL,<br>U.S. POSTAL SERVICE, | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

MEMORANDUM OPINION

Plaintiff James E. Zeigler is a Vietnam War-era veteran who suffers from service-connected Post Traumatic Stress Disorder ("PTSD") and depression. He was a supervisor at the United States Postal Service ("USPS") for 16 years until he was assaulted by his supervisor in 1998. *See* Compl. ¶¶ 9-12. Thereafter, he tumbled into a long period of Major Depression and PTSD symptoms. In August and September 2001, his treating psychologist Diane F. Jayson, Ph. D., notified USPS that he was cleared to return to work under certain restrictions. *See* Compl. ¶¶ 38-43. When asked to comment specifically, his psychologist responded that Mr. Zeigler's current impairment had no significant impact on his major life activities. *See* Def.'s Mot. to Dismiss or, in the Alternative for Summ. J. ("Def.'s Mem."), Ex. A. USPS determined that Mr. Zeigler was not "disabled" under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, and needed no accommodation. *See* Compl. ¶ 49. The Veteran's Administration ("VA"), however, has found Mr. Zeigler to be a "disabled" veteran. *See* Compl. ¶ 48; Pl.'s Opp. to Def.'s Mot. to Dismiss, or in the

Alternative for Summ. J. and Pl.'s Mot. for Partial Summ. J. ("Pl.'s Opp."), Ex. K.  Can one be disabled within the meaning of one statute and not another?  The simple answer is "yes" and Mr. Zeigler's psychologist declared him not disabled within the meaning of the Rehabilitation Act.  Summary judgment, in part, must be granted to USPS.  The claim of discrimination based on disability will be dismissed as well as Mr. Zeigler's claim that USPS failed to accommodate his disability.  The entirely separate claim of retaliation based on prior protected activity, however, will not be dismissed.

## I.  BACKGROUND FACTS

Mr. Zeigler alleges that he was assaulted by his supervisor in 1998 and that the incident was poorly handled by the USPS.  *See* Compl. ¶¶ 12-16.  He suffered from depression and hypertension resulting from work stress.  *Id*. ¶ 18.  He took a short period of leave in 1998 to obtain medical treatment and eventually took a long unpaid medical leave starting in February 2000.  *Id*. ¶¶ 19-21.  In March of that year, his physician notified the USPS that Mr. Zeigler's "long history and recurrent symptomology" of depression going back to 1995 was consistent with chronic Major Depression, which he described as "chronic, recurrent."  *See* Pl.'s Opp., Ex. A.  A July 2000 letter from his psychiatrist notified USPS that his Major Depression was "severe enough to interfere with his social, occupational, and familial functioning" and that he would "benefit from medical disability."  Pl.'s Opp., Ex. B.

Despite these letters to the USPS Health Unit, Mr. Zeigler's supervisors terminated him in October 2000 for being Absent Without Leave ("AWOL").  *See* Compl. ¶ 31.  As he appealed his termination, Dr. Jayson notified USPS that Mr. Zeigler also suffered from PTSD, that his symptoms were "quite severe," and that everyday incidents "tend[ed] to trigger post traumatic

reactions in him and he is driven to much avoidance behavior that is clearly maladaptive." *Id.* ¶ 33; Pl.'s Opp., Ex. C. The therapist concurred with the psychiatrist that the multiple disabilities were "severe enough to warrant medical disability." *Id.* Mr. Zeigler's termination was reversed by USPS Human Resources and its Equal Employment Opportunity ("EEO") Office of Compliance and Appeals on November 13, 2000. *See* Compl. ¶ 34; Pl.'s Opp., Ex. D. The decision stated that the grounds for removal were "arbitrary and capricious and not within the tolerable limits of reasonableness." *Id.* The letter also noted that USPS had "clear and conclusive evidence" that Mr. Zeigler "continued to be incapacitated for duty." *Id.*

After a lengthy period of therapy, Mr. Zeigler was released to return to work by his therapist, with certain restrictions. *See* Compl. ¶ 38; Pl.'s Opp., Ex. E. The therapist first notified USPS that he could return to work on August 2, 2001; her letter stated that he was "clear[ed] . . . to return to work with a **limited duty status**." *Id.* (boldface in original). The requested restrictions included assignment away from the location and persons involved with the assault, time off to attend weekly therapy sessions, a maximum workload of 40 hours/week and four employees to supervise, work in Montgomery County, and assignment in an area of expertise, *i.e.*, Training and Educational Development, HR, Labor Relations, etc. *Id.* By letter dated August 14, 2001, Postmaster Delores Killette denied this request, which she interpreted as a request for temporary light duty, "because [Mr. Zeigler's] restrictions cannot be accommodated." *See* Compl. ¶ 39; Pl.'s Opp. Ex. F. The letter suggested that if Mr. Zeigler's condition were permanent and "there is no prognosis of sufficient recovery for [his] return to full duty, [he] may request permanent reassignment, reasonable accommodation or disability retirement, as appropriate." *Id.*

Mr. Zeigler's therapist tried again on August 30, 2001. In her second letter, she made

clear that he was cleared to return to work "in a **reasonable accommodation status**." Compl. ¶ 40; Pl.'s Opp., Ex. G-1 (boldface in original). The same restrictions were identified. The Reasonable Accommodation Committee at USPS responded on August 27, 2001, asking for completion of a Medical Restrictions Form and for Mr. Zeigler's "physician's assessment of how the impairment impacts major life activities, i.e. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *See* Compl. ¶ 42; Pl.'s Opp., Ex. H.

A September 11, 2001, letter from Mr. Zeigler's therapist again asked for return to work in a "**reasonable accommodation status**" with all the same restrictions except that the request that he be released for weekly therapy sessions was omitted. *See* Compl. ¶ 41; Pl.'s Opp., Ex. G-2. (boldface in original). The therapist answered the letter from the Reasonable Accommodation Committee on September 27, 2001. *See* Pl.'s Opp., Ex. I-1. On the Medical Restrictions Assessment form, the therapist indicated that Mr. Zeigler suffers from PTSD and that it is permanent; that he could only work eight hours a day without overtime; and that other necessary restrictions included:

> No exposure to persons causing stressors. Be assigned to a work location where stressors did not occur. Be assigned to work in Montgomery County for at least 1 year. No more than 40 hours 8 AM to 4 PM Mon-Fri for at least 6 months. Work in areas of expertise, as per letter of 9/11/01.

*See* Compl. ¶ 43, Pl.'s Opp., Ex. I-2. In her cover letter, the therapist stated that she was a treating clinician and not a physician but she knew of no physical restrictions for Mr. Zeigler. *See* Pl.'s Opp., Ex. I-1. She continued:

> Mr. Zeigler is diagnosed with Posttraumatic Stress Disorder. He also has suffered from a secondary diagnosis of Major Depression. However, he has made much progress in therapy and his depression has lifted to the point that there are virtually no current symptoms. Although some symptoms of

> Posttraumatic Stress Disorder still persist, they should not currently interfere with his job performance as long as he is assigned to a work location where the past stressors did not occur and as long as there is no exposure to the persons causing the stressors.
>
> Mr. Zeigler's current impairment has no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working.

*Id*.

On February 19, 2002, the VA determined that Mr. Zeigler was entitled to a finding of individual unemployability, with an evaluation of 70 percent assigned for serious and specified deficiencies in most areas of life. *See* Compl. ¶ 48, Pl.'s Opp., Ex. K. The conclusion of the VA was that "[s]everal documents in the file show that the veteran has post traumatic stress and is unable to work because of it." *Id.* The VA explained that Mr. Zeigler "was found to be service connected for post traumatic stress disorder on the rating decision dated October 30, 2001" and that Mr. Zeigler "filed for an increase in compensation based on unemployability on December 10, 2001." *Id.* The USPS failed to respond to any inquiries from the VA. *Id.*

On March 15, 2002, the USPS Reasonable Accommodation Committee sent Mr. Zeigler a memorandum that incorrectly stated that the Committee had recently met with Mr. Zeigler; in fact, no meeting had taken place. *See* Compl. ¶¶ 49-50  The memo stated that the Committee had determined that no reasonable accommodation was required because "available medical records failed to establish that [Mr. Zeigler was] disabled in accordance with the Rehabilitation Act." *See* Pl.'s Opp., Ex. L. The Committee's decision was based solely on the therapist's September 27, 2001, cover letter, as the members of the Committee received no other documentation concerning Mr. Zeigler's status. *See* Pl.'s Opp. Exs. M, N.

Mr. Zeigler contacted an EEO Counselor on April 2, 2002, and filed a formal EEO complaint on September 20, 2002. *See* Compl. ¶¶ 51-53. Almost one year later, on September 5, 2003, the USPS accepted Mr. Zeigler's claim of discrimination based on mental disability (PTSD/Major Depression) and retaliation when, on March 25 2002, he received a denial of his request for accommodation. Def.'s Mem., Ex. D.

Mr. Zeigler sought a hearing before an EEO Administrative Judge, who, on April 26, 2006, granted the USPS's Motion For Decision Without a Hearing. *See* Def.'s Mem., Ex. E. On May 2, 2006, UPSP issued a Notice of Final Action, implementing the Administrative Judge's decision. *See* Pl.'s Opp., Ex. Q. This lawsuit followed.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual

allegations. *Browning*, 292 F.3d at 242. In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt, v. Chao*, 226 F. Supp. 2d at 196 (D.D.C. 2002) (citation omitted).

If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Holy Land*, 333 F.3d at 165; Fed. R. Civ. P. 12(b)(6).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a

reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. STATUTORY BACKGROUND

Mr. Zeigler's claims arise under the Rehabilitation Act, which provides, *inter alia*, that "no otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act also provides that the standards governing employment discrimination claims applicable under the Americans with Disabilities Act ("ADA") apply to the Rehabilitation Act, *id*. § 794(d), and thus the legal principles are the same. *See Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 n.10 (D.D.C. 2002). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1614.203(c)(1) (EEOC Rehabilitation Act regulation). A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *see also* 29 C.F.R. § 1614.203(a)(6).

To make out a claim under the Rehabilitation Act, a plaintiff must present direct evidence of discrimination based on his disability, or he may provide indirect evidence of discrimination. For certain Rehabilitation Act claims, a three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973) applies. *Duncan v. WMATA*, 240 F.3d

1110, 1114 (D.C. Cir. 2001) (en banc). But as the D.C. Circuit has noted, that "test is not equally applicable to all cases" alleging disability discrimination. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993). In particular, in a reasonable accommodation case, the plaintiff "carries the burden of proving by a preponderance of the evidence that [he] has a disability, but with a reasonable accommodation (which [he] must describe), [he] can perform the essential functions of [his] job." *Flemming v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). This approach governs cases "(1) where the employer claims non-discriminatory reasons for its adverse employment action; [and] (2) where the employer maintains that the employee is not an otherwise qualified individual with a disability, or that no reasonable accommodation is available, so that the plaintiff falls outside the scope of ADA protection." *Id.* (citing *Barth*, 2 F.3d at 1186). Therefore, it applies here to Mr. Zeigler's claims relating to USPS's failure to provide his requested accommodations to enable him to transition back into active work status.

## IV. ANALYSIS

The fundamental question is whether Mr. Zeigler was discriminated against, or retaliated against, when his request for a reasonable accommodation was denied on March 22, 2002. The USPS responds that he was not a disabled person at that point and, therefore, was not entitled to any accommodation. USPS does not address whether he was perceived as having a disability or whether he was retaliated against based on prior EEO activity.

**A. Disability Claims**

Discrimination on the basis of a disability is a complex concept that has caused the Supreme Court to wrestle with its components on more than one occasion. The Rehabilitation Act itself defines "an individual with a disability" as a person who has "a physical or mental impairment

which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B). The Court must apply a three-step analysis to this statutory definition. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, a plaintiff must be suffering a physical or mental impairment. Second, he must be impaired in a major life activity. Third, the physical or mental impairment must "substantially limit[]" a major life activity. *Id.* "Merely having an impairment does not make [an individual] disabled." *Toyota v Williams*, 534 U.S. 184, 195 (2002). Instead, the employee must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial." *Id.* at 196-97. To qualify as "substantial," "the impairment's impact must also be permanent or long-term." *Id.* at 198. Because most adults, at least as they reach middle-age, might claim some sort of disability, the definition must be interpreted strictly to create a demanding standard for qualifying as "disabled" under federal law. *Toyota*, 534 U.S. at 197.

In this case, Mr. Zeigler's psychologist told USPS that his impairment had "no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working." Pl.'s Opp., Ex. I-1. Because Mr. Zeigler, as of September 2001, did not have an impairment that limited a major life activity, he did not qualify as "disabled" under the Rehabilitation Act and was not entitled to an accommodation. Therefore Count 1 for failure to accommodate must be dismissed.

Plaintiff alleges in Count 2 of his Complaint that the USPS personnel created a "hostile work environment when they harassed Mr. Zeigler by various acts … ." *See* Compl. ¶ 84. The Complaint alleges a pattern of behavior that evidenced an unwillingness to accommodate Mr. Zeigler on a timely basis and a failure to "engage in a good faith interactive process on his reasonable

accommodations requests." *Id*. "To make out a prima facie case of a hostile work environment claim based on a disability, plaintiff must show that (1) he is a member of a protected class, in this case a 'qualified individual with a disability;' (2) he was subject to unwelcome harassment; (3) the harassment occurred because of his disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but took no action to prevent it." *See Pantazes v. Jackson*, 366 F. Supp. 2d 57, 71 (D.D.C. 2005) (citing *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003)). As previously stated in this opinion, Mr. Zeigler did not qualify as "disabled" under the Rehabilitation Act, according to his clinician's letter. As a result, this claim must be dismissed.

### B. Retaliation Claim

The Rehabilitation Act, 29 U.S.C. § 794(a), provides a cause of action for retaliation pursuant to its incorporation of the ADA, 42 U.S.C. § 12203(a), which prohibits employers from taking reprisal against "any individual because such individual has opposed any act or practice made unlawful by this Act … ." *Duncan v. Washington*, 214 F.R.D. 43, 49-50 (D.D.C. 2003). USPS asserts that Mr. Zeigler cannot establish a *prima facie* case of retaliation, but its argument (filed in November 2006) fails to appreciate the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2410-16 (2006). Under *Burlington Northern*, the test for whether a *prima facie* case of retaliation has been shown is: (1) that a plaintiff engaged in protected conduct, such as filing EEO charges; (2) that a reasonable employee would have found the challenged retaliatory action materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination;" and (3) that a causal connection existed between the adverse action and the protected activity. *Id.* USPS

contends that the 18-month distance between Mr. Zeigler's appeal of his October 2000 discharge and the alleged March 2002 retaliation dooms any claim of a causal connection. *See Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (a 20-month lag shows no causality at all).

The Court is not persuaded by the USPS's causation argument, given the record before it. Mr. Zeigler took unpaid leave because of a mental disability in 2000 and his supervisors, in an arbitrary, capricious, and unreasonable manner, discharged him as AWOL. When he applied, through his therapist, for a reasonable accommodation in August-September 2001, *only the last letter from his therapist was forwarded to the Reasonable Accommodation Committee*. Even the last letter identified a potential disability, despite the last statement in the letter. USPS argues that Mr. Zeigler's prior protected activity was his appeal of his discharge. Not so. His prior protected activity was the repeated request, in August - September 2001, for a return to work with certain accommodations. That activity was certainly timely to support an inference of causation.

It is clear that the Reasonable Accommodation Committee did not receive full information concerning Mr. Zeigler's mental health. As a simple for instance, there is no indication that the Committee received or reviewed the Medical Restrictions Assessment Form, much less his therapist's repeated letters in August and September 2001. The September 11 letter (its date might explain the tardy response) was the fourth time that the therapist tried to obtain a return-to-work plan for Mr. Zeigler, who still experienced PTSD symptoms on occasion, in order to keep him away from the location and person involved in the 1998 attack. The USPS does not shine in its response to Mr. Zeigler's situation, from its onset to the present. On this record, most especially since the USPS did not analyze Mr. Zeigler's Complaint allegations of retaliation based on current law, the Court cannot say that Mr. Zeigler did not suffer retaliation when his request for an accommodation

was denied in March 2002. Defendant's motion is denied as to Count 3 of the Complaint.

## V. CONCLUSION

The motion for summary judgment will be granted in part and denied in part. The motion will be granted as to the claims for disability discrimination and disability harassment based on the failure to approve accommodations for Mr. Zeigler in March 2002. The motion will be denied as to the claim for retaliation based on the same action. A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: September 6, 2007