IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES E. ZEIGLER, | : | |
| PLAINTIFF | : | |
| v. | | CASE NO. 06-1385 (RMC) |
| | : | |
| JOHN E. POTTER, | : | |
| Postmaster General | | |
| U.S. Postal Service | : | |
| | | |
| DEFENDANT | : | |

**PLAINTIFF'S MOTION FOR CLARIFICATION AND/OR
<u>RECONSIDERATION</u>**

Plaintiff JAMES ZEIGLER, through counsel, respectfully requests the Court to clarify and/or reconsider its dismissal of his Failure to Accommodate and Disability Harassment claims in its September 6, 2007 Memorandum Opinion ("Opinion").

Specifically, Plaintiff respectfully asks the court to clarify and/or reconsider the reliance it places on Dr. Jayson's (Mr. Zeigler's therapist) September 27, 2001 cover letter to the USPS, in concluding that Mr. Zeigler was not "disabled" within the meaning of the Rehabilitation Act.

The Court appears to have determined that Dr. Jayson's September 27, 2001 cover letter, containing the sentence that Mr. Zeigler's "current impairment has no significant impact on his major life activities, such as for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working", entitles the

USPS to a dismissal, as a matter of law, of Plaintiff's failure to accommodate and disability harassment claims.

The Court states in its Opinion on page 10, that:

> "In this case, Mr. Zeigler's psychologist told USPS that his impairment had 'no significant impact on his major life activities, such as caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working. Pl.'s Opp., Ex. I-1  Because Mr. Zeigler, as of September 2001, did not have an impairment that limited a major life activity, he did not qualify as 'disabled' under the Rehabilitation Act and was not entitled to accommodation.  Therefore, Count I for failure to accommodate must be dismissed."

With respect to Plaintiff's Count II disability harassment claim, the Court states on page 11 that:

> " As previously stated in this opinion, Mr. Zeigler did not qualify as 'disabled' under the Rehabilitation Act , according to his clinician's letter. As a result, this claim must be dismissed."

Plaintiff seeks clarification as to whether the Court interpreted Dr. Jayson's cover letter to mean that Mr. Zeigler's mental impairment did not substantially limit any major life activity, both at the time the letter was written when Plaintiff was requesting reasonable accommodation, and *at any time in the past.*  Such an interpretation, Plaintiff asserts,  would be inconsistent with the other facts presented in this case, especially when viewed in a light most favorable to the Plaintiff under the summary judgment standard of review, and an error of law.   Plaintiff further submits that it would

be erroneous and unjust to only rely on Dr. Jayson's cover letter to dismiss his Count I and II claims.  The record shows that Dr. Jayson clearly did not understand the legal meaning behind the terminology "substantially limiting" and  "major life activity", language used in the USPS question to her in their letter requesting additional medical documentation on Mr. Zeigler's disability.

The Court does, in fact,  question the USPS's motives in its mishandling of Mr. Zeigler's repeated requests for reasonable accommodation.  The Court states, on page 12 of its Opinion that Dr. Jayson's September 27, 2001 letter was the "only letter from [Mr. Zeigler's] therapist that was forwarded to the Reasonable Accommodation Committee", and that "there is no indication that the Committee received or reviewed the Medical Assessment Form, much less his therapist's repeated letters in August and September 2001."   In light of these circumstances,  Plaintiff respectfully requests the Court to reconsider the weight given to Dr. Jayson's cover letter; and in doing so, reconsider the facts with respect to all three prongs of the definition of  "disability" within the meaning of the Rehabilitation Act, advanced in Plaintiff's pleadings.

In order to meet the criteria of an individual with a "disability" within the protection of the Rehabilitation Act, one must be a person who:

(1) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(2) has a record of such impairment; or

(3) is regarded as having such an impairment.

Virtually identical definitions of "disability" are found at 42 USCA § 12102; 29 USC 705(20)(B), 29 C.F.R.1630.2(g); 28 C.F.R. 35.104.

The standards used in determining whether the protection afforded under the Rehabilitation Act in the employment context against disability discrimination has been violated are the same standards applied under Titles I and V of the ADA.   The EEOC's published regulations at 29 C.F.R. Part 1630 et seq., implementing ADA sections applying to employment and employment opportunities for qualified disabled individuals, contain instructive guidance on whether a person is an individual with a "disability". The Appendix to  29 C.F.R. Part 1630, at page 367, states:

"The definition of the term 'disability' is divided into three parts. An individual must meet at least one of these parts in order to be considered an individual with a disability...".

With regard to whether a person has a record of a substantially limiting condition under the second prong of the definition, C.F.R. Part 1630, Appendix at page 370 further states:

"The second part of the definition provides that an individual with a record  of an impairment that substantially limits a major life activity is an individual with a disability. The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability.  For example, this provision protects former cancer patients from discrimination based on their prior medical history... **This part of the definition is satisfied if a record relied on by an employer indicates that the**

**individual has or has had a substantially limiting impairment... There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records**." (emphasis added)

The Appendix, on page 370 further goes on to discuss the third prong of the definition, a person being "regarded as" having a substantially limiting condition:

"The third part of the definition provides that an individual who is regarded by an employer or other covered entity as having an impairment that substantially limits a major life activity is an individual with a disability.  There are three different ways in which an individual may satisfy the definition of 'being regarded as an individual with a disability':

(1) The individual may have an impairment **which is not substantially limiting but is perceived by the employer** or other covered entity as constituting a substantially limiting impairment;

(2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

(3) The individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment."
(emphasis added) (See Attached Exhibit A-copy of Pt. 1630, App, p.367;370-371)

The Department of Justice (DOJ ) has also promulgated regulations at 28 C.F.R. Part 35, implementing Title II of the ADA , which are instructive as well on the definition of an individual with a disability.   Part 35 Appendix A, beginning on page 542 sets forth three tests, one for each prong of the "disability" definition.  Test A applies to prong one of the definition- A physical or mental impairment that substantially limits one or more of

the major life activities of an individual.    Test B applies to the second prong of the definition-A record of such an impairment- and states:

"This test is intended to cover those with a record of an impairment...this includes someone who has a history of an impairment that substantially limited a major life activity **such as someone who has recovered from an impairment** ...It also includes persons who have been misclassified as having an impairment.

This provision is included in the definition in part to protect individuals who have recovered from a physical or mental impairment that **previously substantially limited them in a major life activity.  Discrimination on the basis of such a past impairment is prohibited.**  Frequently occurring examples of the first group (those who have a history of an impairment) are **persons with histories of mental or emotional illness**, heart disease, or cancer; examples of the second group (those who have been misclassified as having an impairment) are persons who have been misclassified as having mental retardation or mental illness." (emphasis added)

Test C, for the third prong of the definition- Being regarded as having such an impairment- states:

"This test...is intended to cover persons who are treated by a public entity as having a physical or mental impairment that substantially limits a major life activity.  **It applies when a person is treated as if he or she has an impairment that substantially limits a major life activity, regardless of whether that person has an impairment…. Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's abiliyt to work as a result of negative reactions of others to the impairment**"

(emphasis added) (See attached Exhibit B-copy of Pt. 35, App.A, p. 544)

The facts presented by the pleadings in this case, and even despite Dr. Jayson's letter in question, when viewed in a light most favorable to the Plaintiff still show that the USPS had *a record* of Mr. Zeigler's disability which substantially limited one or more major life activities. The USPS had complete medical documentation in its possession throughout Mr. Zeigler's medical leave substantiating Mr. Zeigler's long term PTSD and Major Depression; *prior to his request for reasonable accommodation*, showing among other things that his impairment severely interfered with his"social, occupational and familial functioning"; including his "frequent nightmares", "significant insomnia","poor concentration", "social avoidance behavior", "social isolation". The USPS certainly knew Mr. Zeigler was on long term medical leave and was unable to come back to work for over one year prior to his request for reasonable accommodation. Despite that, however, the USPS instigated removal action against Mr. Zeigler prior to his request for reasonable accommodation, and the EEO Office of Compliance and Appeals subsequently reversed the removal on the grounds that the USPS had *"clear and conclusive evidence"* that Mr. Zeigler was *medically incapacitated* for duty. Furthermore, the USPS then *regarded* his medical condition severe enough that he could not work, warranting disability retirement, and contacted Mr. Zeigler about applying for disability retirement benefits.

For the reasons above, Mr. Zeigler respectfully requests the Court to reconsider the record, drawing all reasonable inferences in his favor, and find that he can, in fact, make a prima facie case of being "disabled", as well as "qualified" at the time he requested reasonable accommodation.

Respectfully Submitted,

_____/s/_____
Patricia Koh
D.C.Bar No. Md  12093
Debra Koh
Pro Hac Vice Attorney
Law Offices of Koh & Koh
3 Leonard Court
Rockville, MD 20850
(301) 424-8757
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 20th day of September 2007, the foregoing PLAINTIFF'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION was electronically filed with the Court, and is expected to be served electronically by the Court's on:

Andrea McBarnette, Esq.
Assistant US Attorney
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20530
(202) 514-7153


                _____/s/_____
                Patricia Koh
                D.C.Bar No. Md 12093
                Law Offices of Koh & Koh
                3 Leonard Court
                Rockville, MD 20850
                (301) 424-8757
                Attorney for Plaintiff