## Section 1630.1(b) and (c)  Applicability and Construction

Unless expressly stated otherwise, the standards applied in the ADA are not intended to be lesser than the standards applied under the Rehabilitation Act of 1973.

The ADA does not preempt any Federal law, or any State or local law, that grants to individuals with disabilities protection greater than or equivalent to that provided by the ADA. This means that the existence of a lesser standard of protection to individuals with disabilities under the ADA will not provide a defense to failing to meet a higher standard under another law. Thus, for example, title I of the ADA would not be a defense to failing to collect information required to satisfy the affirmative action requirements of section 503 of the Rehabilitation Act. On the other hand, the existence of a lesser standard under another law will not provide a defense to failing to meet a higher standard under the ADA. See House Labor Report at 135; House Judiciary Report at 69–70.

This also means that an individual with a disability could choose to pursue claims under a State discrimination or tort law that does not confer greater substantive rights, or even confers fewer substantive rights, if the potential available remedies would be greater than those available under the ADA and this part. The ADA does not restrict an individual with a disability from pursuing such claims in addition to charges brought under this part. House Judiciary at 69–70.

The ADA does not automatically preempt medical standards or safety requirements established by Federal law or regulations. It does not preempt State, county, or local laws, ordinances or regulations that are consistent with this part, and are designed to protect the public health from individuals who pose a direct threat, that cannot be eliminated or reduced by reasonable accommodation, to the health or safety of others. However, the ADA does preempt inconsistent requirements established by State or local law for safety or security sensitive positions. See Senate Report at 27; House Labor Report at 57.

An employer allegedly in violation of this part cannot successfully defend its actions by relying on the obligation to comply with the requirements of any State or local law that imposes prohibitions or limitations on the eligibility of qualified individuals with disabilities to practice any occupation or profession. For example, suppose a municipality has an ordinance that prohibits individuals with tuberculosis from teaching school children. If an individual with dormant tuberculosis challenges a private school's refusal to hire him or her because of the tuberculosis, the private school would

not be able to rely on the city ordinance as a defense under the ADA.

## Sections 1630.2(a)–(f)  Commission, Covered Entity, etc.

The definitions section of part 1630 includes several terms that are identical, or almost identical, to the terms found in title VII of the Civil Rights Act of 1964. Among these terms are "Commission," "Person," "State," and "Employer." These terms are to be given the same meaning under the ADA that they are given under title VII.

In general, the term "employee" has the same meaning that it is given under title VII. However, the ADA's definition of "employee" does not contain an exception, as does title VII, for elected officials and their personal staffs. It should be further noted that all State and local governments are covered by title II of the ADA whether or not they are also covered by this part. Title II, which is enforced by the Department of Justice, becomes effective on January 26, 1992. See 28 CFR part 35.

The term "covered entity" is not found in title VII. However, the title VII definitions of the entities included in the term "covered entity" (e.g., employer, employment agency, etc.) are applicable to the ADA.

## Section 1630.2(g)  Disability

In addition to the term "covered entity," there are several other terms that are unique to the ADA. The first of these is the term "disability." Congress adopted the definition of this term from the Rehabilitation Act definition of the term "individual with handicaps." By so doing, Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term "disability" as used in the ADA. Senate Report at 21; House Labor Report at 50; House Judiciary Report at 27.

The definition of the term "disability" is divided into three parts. An individual must satisfy at least one of these parts in order to be considered an individual with a disability for purposes of this part. An individual is considered to have a "disability" if that individual either (1) has a physical or mental impairment which substantially limits one or more of that person's major life activities, (2) has a record of such an impairment, or, (3) is regarded by the covered entity as having such an impairment. To understand the meaning of the term "disability," it is necessary to understand, as a preliminary matter, what is meant by the terms "physical or mental impairment," "major life activity," and "substantially limits." Each of these terms is discussed below.

EXHIBIT A

to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

The terms "number and types of jobs" and "number and types of other jobs," as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., "few," "many," "most") from which an individual would be excluded because of an impairment.

If an individual has a "mental or physical impairment" that "substantially limits" his or her ability to perform one or more "major life activities," that individual will satisfy the first part of the regulatory definition of "disability" and will be considered an individual with a disability. An individual who satisfies this first part of the definition of the term "disability" is not required to demonstrate that he or she satisfies either of the other parts of the definition. However, if an individual is unable to satisfy this part of the definition, he or she may be able to satisfy one of the other parts of the definition.

Section 1630.2(k)  Record of a Substantially Limiting Condition

The second part of the definition provides that an individual with a record of an impairment that substantially limits a major life activity is an individual with a disability. The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based on their prior medical history. This provision also ensures that individuals are not discriminated against because they have been misclassified as disabled. For example, individuals misclassified as learning disabled are protected from discrimination on the basis of that erroneous classification. Senate Report at 23; House Labor Report at 52–53; House Judiciary Report at 29.

This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.

The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of "disability" under part 1630. Other statutes, regulations and programs may have a definition of "disability" that is not the same as the definition set forth in the ADA and contained in part 1630. Accordingly, in order for an individual who has been classified in a record as "disabled" for some other purpose to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities.

Section 1630.2(l)  Regarded as Substantially Limited in a Major Life Activity

If an individual cannot satisfy either the first part of the definition of "disability" or the second "record of" part of the definition, he or she may be able to satisfy the third part of the definition. The third part of the definition provides that an individual who is regarded by an employer or other covered entity as having an impairment that substantially limits a major life activity is an individual with a disability.

There are three different ways in which an individual may satisfy the definition of "being regarded as having a disability":

(1) The individual may have an impairment which is not substantially limiting but is perceived by the employer or other covered entity as constituting a substantially limiting impairment;

(2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

(3) The individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment.

Senate Report at 23; House Labor Report at 53; House Judiciary Report at 29.

An individual satisfies the first part of this definition if the individual has an impairment that is not substantially limiting, but the covered entity perceives the impairment as being substantially limiting. For example, suppose an employee has controlled high blood pressure that is not substantially limiting. If an employer reassigns the individual to less strenuous work because of unsubstantiated fears that the individual will suffer a heart attack if he or she continues to perform strenuous work, the employer would be regarding the individual as disabled.

An individual satisfies the second part of the "regarded as" definition if the individual has an impairment that is only substantially limiting because of the attitudes of others toward the condition. For example, an individual may have a prominent facial scar or disfigurement, or may have a condition that periodically causes an involuntary jerk of the head but does not limit the individual's

major life activities. If an employer discriminates against such an individual because of the negative reactions of customers, the employer would be regarding the individual as disabled and acting on the basis of that perceived disability. See Senate Report at 24; House Labor Report at 53; House Judiciary Report at 30–31.

An individual satisfies the third part of the "regarded as" definition of "disability" if the employer or other covered entity erroneously believes the individual has a substantially limiting impairment that the individual actually does not have. This situation could occur, for example, if an employer discharged an employee in response to a rumor that the employee is infected with Human Immunodeficiency Virus (HIV). Even though the rumor is totally unfounded and the individual has no impairment at all, the individual is considered an individual with a disability because the employer perceived of this individual as being disabled. Thus, in this example, the employer, by discharging this employee, is discriminating on the basis of disability.

The rationale for the "regarded as" part of the definition of disability was articulated by the Supreme Court in the context of the Rehabilitation Act of 1973 in *School Board of Nassau County* v. *Arline*, 480 U.S. 273 (1987). The Court noted that, although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling. "Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment." 480 U.S. at 283. The Court concluded that by including "regarded as" in the Rehabilitation Act's definition, "Congress acknowledged that society's accumulated myths and fears about disability and diseases are as handicapping as are the physical limitations that flow from actual impairment." 480 U.S. at 284.

An individual rejected from a job because of the "myths, fears and stereotypes" associated with disabilities would be covered under this part of the definition of disability, whether or not the employer's or other covered entity's perception were shared by others in the field and whether or not the individual's actual physical or mental condition would be considered a disability under the first or second part of this definition. As the legislative history notes, sociologists have identified common attitudinal barriers that frequently result in employers excluding individuals with disabilities. These include concerns regarding productivity, safety, insurance, liability, attendance, cost of accommodation and accessibility, workers' compensation costs, and acceptance by coworkers and customers.

Therefore, if an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability. If the employer cannot articulate a non-discriminatory reason for the employment action, an inference that the employer is acting on the basis of "myth, fear or stereotype" can be drawn.

## Section 1630.2(m)   Qualified Individual With a Disability

The ADA prohibits discrimination on the basis of disability against qualified individuals with disabilities. The determination of whether an individual with a disability is "qualified" should be made in two steps. The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. For example, the first step in determining whether an accountant who is paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA. This is sometimes referred to in the Rehabilitation Act caselaw as determining whether the individual is "otherwise qualified" for the position. See Senate Report at 33; House Labor Report at 64–65. (See §1630.9 Not Making Reasonable Accommodation).

The second step is to determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation. The purpose of this second step is to ensure that individuals with disabilities who can perform the essential functions of the position held or desired are not denied employment opportunities because they are not able to perform marginal functions of the position. House Labor Report at 55.

The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision. This determination should be based on the capabilities of the individual with a disability at the time of the employment decision, and should not be based on speculation that the employee may become unable in the future or may cause increased health insurance premiums or workers compensation costs.

## Section 1630.2(n)   Essential Functions

The determination of which functions are essential may be critical to the determination of whether or not the individual with a disability is qualified. The essential functions are those functions that the individual

major life activities (or has a history of, or is regarded as having such an effect).

Sometimes respiratory or neurological functioning is so severely affected that an individual will satisfy the requirements to be considered disabled under the regulation. Such an individual would be entitled to all of the protections afforded by the Act and this part. In other cases, individuals may be sensitive to environmental elements or to smoke but their sensitivity will not rise to the level needed to constitute a disability. For example, their major life activity of breathing may be somewhat, but not substantially, impaired. In such circumstances, the individuals are not disabled and are not entitled to the protections of the statute despite their sensitivity to environmental agents.

In sum, the determination as to whether allergies to cigarette smoke, or allergies or sensitivities characterized by the commenters as environmental illness are disabilities covered by the regulation must be made using the same case-by-case analysis that is applied to all other physical or mental impairments. Moreover, the addition of specific regulatory provisions relating to environmental illness in the final rule would be inappropriate at this time pending future consideration of the issue by the Architectural and Transportation Barriers Compliance Board, the Environmental Protection Agency, and the Occupational Safety and Health Administration of the Department of Labor.

TEST B—A RECORD OF SUCH AN IMPAIRMENT

This test is intended to cover those who have a record of an impairment. As explained in paragraph (3) of the rule's definition of disability, this includes a person who has a history of an impairment that substantially limited a major life activity, such as someone who has recovered from an impairment. It also includes persons who have been misclassified as having an impairment.

This provision is included in the definition in part to protect individuals who have recovered from a physical or mental impairment that previously substantially limited them in a major life activity. Discrimination on the basis of such a past impairment is prohibited. Frequently occurring examples of the first group (those who have a history of an impairment) are persons with histories of mental or emotional illness, heart disease, or cancer; examples of the second group (those who have been misclassified as having an impairment) are persons who have been misclassified as having mental retardation or mental illness.

TEST C—BEING REGARDED AS HAVING SUCH AN IMPAIRMENT

This test, as contained in paragraph (4) of the definition, is intended to cover persons who are treated by a public entity as having a physical or mental impairment that substantially limits a major life activity. It applies when a person is treated as if he or she has an impairment that substantially limits a major life activity, regardless of whether that person has an impairment.

The Americans with Disabilities Act uses the same "regarded as" test set forth in the regulations implementing section 504 of the Rehabilitation Act. See, e.g., 28 CFR 42.540(k)(2)(iv), which provides:

(iv) "Is regarded as having an impairment" means (A) Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) Has none of the impairments defined in paragraph (k)(2)(i) of this section but is treated by a recipient as having such an impairment.

The perception of the covered entity is a key element of this test. A person who perceives himself or herself to have an impairment, but does not have an impairment, and is not treated as if he or she has an impairment, is not protected under this test.

A person would be covered under this test if a public entity refused to serve the person because it perceived that the person had an impairment that limited his or her enjoyment of the goods or services being offered.

For example, persons with severe burns often encounter discrimination in community activities, resulting in substantial limitation of major life activities. These persons would be covered under this test based on the attitudes of others towards the impairment, even if they did not view themselves as "impaired."

The rationale for this third test, as used in the Rehabilitation Act of 1973, was articulated by the Supreme Court in Arline, 480 U.S. 273 (1987). The Court noted that although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling. "Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment." Id. at 283. The Court concluded that, by including this test in the Rehabilitation Act's definition, "Congress acknowledged that society's accumulated myths and fears about disability and diseases are as handicapping as are the physical limitations that flow from actual impairment." Id. at 284.

Thus, a person who is denied services or benefits by a public entity because of myths, fears, and stereotypes associated with disabilities would be covered under this third

EXHIBIT B