UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES E. ZEIGLER,              ) | |
|                                ) | |
|     Plaintiff,      ) | |
|                                ) | |
|     v.              ) | Civil Action No. 06-1385 (RMC) |
|                                ) | |
| JOHN E. POTTER, Postmaster General, ) | |
| U.S. Postal Service,           ) | |
|                                ) | |
|     Defendant.      ) | |

**MEMORANDUM OPINION**

James E. Zeigler, a Vietnam War veteran suffering from depression and Post Traumatic Stress Disorder ("PTSD"), filed this lawsuit against his former employer, the United States Postal Service ("USPS"), alleging that USPS failed to accommodate his disability, discriminated against him on the basis of his disability, and retaliated against him for requesting accommodations, all in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq*. Compl. [Dkt. # 1]. In a Memorandum Opinion dated September 6, 2007, the Court dismissed his claims of discrimination and failure to accommodate, leaving only his retaliation claim. *See* Dkt. # 14. USPS now moves for summary judgment as to Mr. Zeigler's retaliation claim. Dkt. # 34. For the reasons set forth below, the Court will grant USPS's motion.

**I.  FACTS**

In February 2000, Plaintiff James Zeigler, a USPS employee, took extended leave from work for medical reasons. Compl. ¶¶ 19-21. In March 2000, Mr. Zeigler's physician sent a letter to the USPS stating that Mr Zeigler's "long history and recurrent symptomology [were]

consistent with a diagnosis of Major Depression," a "chronic, recurrent" condition. Pl.'s Opp'n to Def.'s Mot. for S.J. ("Pl.'s Opp'n") [Dkt. # 38], Ex. 26 (March 27, 2000 Letter from Dr. Sukachevin). Over the next several months, other physicians who treated Mr. Zeigler sent letters to his employer on his behalf, describing his medical condition. *See id.,* Ex. 26 (Letters from various physicians). Nonetheless, Mr. Zeigler was terminated in October 2000 for being Absent Without Leave ("AWOL") from work. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Dkt. # 34] at 3. Mr. Zeigler appealed his termination in October 2000 and USPS reversed the decision the following month. *See id*.

In the following months, Mr. Zeigler continued medical treatment and therapy. Compl. ¶ 37. In August 2001, his psychologist, Dr. Jayson, sent USPS a letter stating that Mr. Zeigler was ready and able to return to work in a limited duty status, subject to certain accommodations. *Id.* ¶ 38. USPS responded to Mr. Zeigler in a letter stating that his requests could not be accommodated. *Id.* ¶ 39. Dr. Jayson sent at least three more letters on Mr. Zeigler's behalf, the last of which was in direct response to questions from USPS. *Id.* ¶¶ 40-43. The final letter stated that Mr. Zeigler's condition was improving and it had "no significant impact on his major life activities." Def.'s Mem., Ex. A-5 (Sept. 27, 2001 Letter from Dr. Jayson). Thereafter, the USPS Reasonable Accommodation Committee ("RAC") denied Mr. Zeigler's request for accommodations and notified him of his right to file an EEO complaint. *Id.*, Ex. A-6 (Mar. 15, 2002 Letter from USPS RAC).

Mr. Zeigler filed an EEO complaint on September 20, 2002, alleging that USPS (1) discriminated against him on the basis of disability when it denied him reasonable accommodations and failed to make payments to him from his reserve account balance and (2) retaliated against him

for filing Office of Workers Compensation Program claims. *Id*. at 5. He filed a second EEO complaint in August 2003, alleging that USPS discriminated against him by requesting medical documentation dating back to March 2000 to support his leave. *See* Def.'s Mem. at 5-6; Compl. ¶ 57. USPS consolidated Mr. Zeigler's two complaints, accepting only two claims: discrimination on the basis of mental disability and retaliation, both in connection with the March 2002 denial of his request for reasonable accomodation. Def.'s Mem. at 6. Mr. Zeigler received a letter acknowledging receipt of his complaint and advising him of his right to seek review of the dismissal of his other claims. *Id.*, Ex. C-1 (April 6, 2005 Acknowledgment and Order) at 2. He did not choose to do so. Def.'s Mem. at 6.

On April 26, 2006, an Administrative Law Judge issued a decision in favor of USPS, finding that Mr. Zeigler had failed to demonstrate that he had a disability as defined by the Rehabilitation Act and that he had failed to make a prima facie case of retaliation. *Id.*, Ex. C-2. This lawsuit followed. USPS moved to dismiss or, in the alternative, for summary judgment. The Court granted the motion in part, dismissing Counts 1 and 2 of the Complaint, discrimination on the basis of disability and hostile work environment, leaving only Count 3, retaliation. *See* Sept. 6, 2007 Mem. Op. [Dkt. # 14]. After conducting discovery, USPS renewed its motion for summary judgment with respect to Mr. Zeigler's retaliation claim.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Furthermore, the court should grant summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw "all justifiable inferences" in favor of the nonmoving party and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. The nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence in support of its position." *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Green v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.*

### B. Retaliation Under the Rehabilitation Act

"The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government. Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993). Because the Rehabilitation Act explicitly incorporates the standards of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12111 *et seq.*, *see* 29 U.S.C. § 794(a)*,* courts have found that it provides a cause of action for retaliation, which prohibits employers from taking negative action towards "any individual because such individual has opposed any act or practice made unlawful by this Act. . . ." *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49 (D.D.C. 2003). To make a prima facie showing of retaliation, Mr.

Zeigler must show that (1) he engaged in protected conduct, (2) a reasonable employee would have found the employer's subsequent action materially adverse, and (3) there is a casual connection between the protected activity and adverse action.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-68 (2006).

### III.  ANALYSIS

This Court already has found that Mr. Zeigler established a prima facie case of retaliation with respect to USPS's denial of accommodations, and USPS has met its burden to provide a legitimate, non-discriminatory reason for its action — namely, that based on the report by Mr. Zeigler's psychologist, USPS found that Mr. Zeigler was not disabled within the meaning of the Rehabilitation Act and was therefore not entitled to accommodations.  *See* Sept. 6, 2007 Mem. Op. at 10-12; Def.'s Mem. at 16-17.  The Court must now consider whether the legitimate reason given by USPS for denying Mr. Zeigler accommodations was not in fact the basis upon which it made its decision.  Thus, the only question presented by this motion for summary judgment is whether Mr. Zeigler has offered sufficient facts for a reasonable jury to find that the reason proffered by USPS is not the true reason behind its decision and that it actually denied him accommodations in retaliation for his EEO activity.[1]

On these facts, the burden Mr. Zeigler must meet is a difficult one.  This Court already has found that USPS did not discriminate against him when it denied him accommodations

---

[1] Mr. Zeigler has only made a prima facie case of retaliation with respect to his request for accommodations.  He alleges other instances of retaliation, but those claims were dismissed from his EEO complaints and he failed to appeal such dismissal.  *See* Def.'s Statement of Material Facts, ¶¶ 5-9 [Dkt. # 34]; Pl.'s Resp. to Def.'s Statement of Facts [Dkt. # 38].  Exhaustion is a prerequisite to bringing suit under the Rehabilitation Act.  *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006).  As Mr. Zeigler has failed to exhaust his administrative remedies with respect to the dismissed claims, he cannot pursue them here.

because, according to his own psychiatrist's statements, he was not "disabled" at that time within the meaning of the statute. Yet, that denial of accommodations is the very conduct he claims was in retaliation for his seeking accommodations in the first place. *See* Def.'s Mot. at 14 ("Plaintiff, however, does not contend that the two individuals on the Committee who allegedly retaliated against him had knowledge of any prior EEO activity by Mr. Zeigler; that is, any activity prior to the request for accommodation that was before the Committee."). Nonetheless, in *Cassimy v. Board of Education*, the Seventh Circuit found that a plaintiff's good-faith request for accommodations is protected activity and that, therefore, the denial of such accommodations can be retaliatory even if it is ultimately determined plaintiff is not disabled. 461 F.3d 932, 938 (7th Cir. 2006) ("Even if [plaintiff] was not disabled, it would still violate the statute if the Board had retaliated against him for attempting to raise a good-faith claim under the ADA. . . . [E]veryone agrees [plaintiff] engaged in statutorily protected expression when he requested an accomodation."); *but see Howard v. Gutierrez*, 237 F.R.D. 310, 312 (D.D.C. 2006) (noting that where plaintiff argues "the defendant denied her reasonable accommodation in retaliation for her Title VII-protected activities, her retaliation claim is largely dependent on the showing of her disability claim"). This Court agrees with the Seventh Circuit — an employer's denial of accommodations, in certain circumstances, can be retaliatory even if it were not prompted by direct discrimination.

As previously stated, however, the burden is on Mr. Zeigler to prove that his request for accommodations was denied not because he did not fall within the statutory definition of "disabled," but rather as a retaliatory measure against him. The D.C. Circuit has found that a plaintiff

> may try in multiple ways to show that the employer's stated reason

> for the employment action was not the actual reason (in other words, was a pretext). Often, the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances. . . . Alternatively, the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision.

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008).

Evidence that similarly situated employees were treated differently from the plaintiff is "especially relevant" to demonstrate pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). Such evidence could include "statistics as to [an employer's] employment policy and practice" to show whether its actions in a particular case "conformed to a general pattern of discrimination" against a protected class. *Id.* at 805. Mr. Zeigler has not proffered statistics nor any other evidence to suggest USPS treated similarly situated employees more favorably than it did him. Rather, he argues that, with respect to his requests for accommodations, USPS did not follow its normal procedures nor engage in a "good faith interactive process" to identify his limitations and discuss reasonable accommodations, as described in federal regulations. *See* Pl.'s Opp'n at 31, citing 29 C.F.R. § 1630.2(o)(3).

According to Mr. Zeigler, USPS's usual procedure in handling a request for disability accommodations was to arrange a meeting between the RAC, the employee, the Injury Compensation Unit, and the medical unit to discuss the employee's specific case. Pl.'s Opp'n at 25-27. Mr. Zeigler alleges in his case, USPS did not arrange such a meeting. *Id.* at 27. The RAC's letter denying Mr. Zeigler's request states that such a meeting had occurred, *see* Def.'s Mem., Ex. A-6; however, the evidence suggests that the RAC typically did not meet with employees who did

not meet the statutory definition of "disabled," and the reference to a meeting with Mr. Zeigler was likely the result of the RAC's use of a form denial letter. *Id.*, Ex. H (Lancaster Dep. at 25-28). Therefore, it does not appear that the RAC failed to follow its normal procedures.

Similarly, to the extent USPS failed to engage in a "good faith interactive process" with Mr. Zeigler regarding his accommodations, it argues it did so under the belief that such discussions were "unnecessary" in light of the fact that Mr. Zeigler was not disabled under the Rehabilitation Act. *See* Def.'s Reply [Dkt. # 42] at 5. Mr. Zeigler's argument is, essentially, that the fact that USPS did not do more to determine whether he was entitled to the accommodations he sought is evidence that the denial of accommodations was retaliatory.[2] "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495. Furthermore, "it is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original). In light of the lack of evidence of retaliatory animus, the inference Mr. Zeigler asks the Court to make here is not a logical one, and the Court declines to make that leap.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary

---

[2] In addition to arguing that USPS failed to engage in a "good faith interactive process," Mr. Zeigler also alleges that the accommodations he sought were modest and that he had a record of disability as defined by the Rehabilitation Act, and that USPS should have considered these factors. Plaintiff cites *Adams v. Rice*, 531 F.3d 936 (D.C. Cir. 2008), as the grounds upon which this Court should reconsider his record of impairment; however, his own brief states that the Circuit in that case required a showing not only of a record of disability but of a substantial limitation to one or more major life activities. Pl.'s Opp'n at 36. Mr. Zeigler has already failed to make that showing.

judgment. Plaintiff's retaliation claim will be dismissed. A memorializing order accompanies this Memorandum Opinion.


DATE: August 13, 2009                                             /s/
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge